**ALLEN et al. v. COE, Com'r of Patents.**

No. 8252.

United States Court of Appeals for the District of Columbia.

Argued March 5, 1943.

Decided April 5, 1943.

Before PARKER, Circuit Judge, sitting by designation, and MILLER and EDGERTON, Associate Justices.

Mr. W. Brown Morton, of New York City, with whom Mr. Clarence M. Fisher, of Washington, D. C., was on the brief, for appellants.

Mr. E. L. Reynolds, U. S. Patent Office, of Washington, D. C., with whom Mr. W. W. Cochran, Solicitor, U. S. Patent Office, of Washington, D. C., was on the brief, for appellee.

PARKER, Circuit Judge.

This is a suit under R.S. § 4915, 35 U.S. C.A. § 63, to require the Commissioner of Patents to issue a patent to plaintiffs covering the process of using spent distillers' grain mash in the production of yeast of a high vitamin content. Of the claims insisted on, claim six may be taken as typical. It is as follows:

"6. Method for producing high yields of yeast, high in baking strength and high in B Vitamin content, including the PP Factor, which consists in growing the yeast in a wort containing spent distillers' grain mash from which the alcohol has been separated in an amount sufficient to constitute not less than 28.5% by volume of the total wort."

These claims were rejected by the examiner in the Patent Office as lacking in invention over the patent to Bacon No. 1,532,858; and his decision was affirmed by the Board of Appeals. The District Court dismissed the complaint on like grounds and the claimants have appealed.

The molasses-mineral salts process of the Hayduck patent for the production of yeast, described in the opinion of Judge Soper in Fleischman Yeast Co. v. Federal Yeast Corporation, D. C., 8 F.2d 186, resulted in a much higher yield of yeast than was possible under the old grain mash process. It was found, however, that the yeast so produced was deficient in vitamin content and hence not desirable for pharmaceutical purposes. The Bacon patent taught the use of vitamin containing materials such as rice polish and spent distillers' grain mash in connection with the molasses-mineral salts process; and claimants found through experimentation that by using the spent distillers' mash in the proper proportions they could obtain a yeast of high vitamin content without decreasing the yield. The disclosure of Bacon showed the use of the rice polish to the extent of about 7% of the total wort but gave no proportion for the spent distillers' mash. Claimants found that best results were obtained by using this in a proportion of not less than 28.5% of the total wort, and claimed invention in

specifying the use of this amount as a minimum.

We agree with the lower court and with the Board of Appeals and the examiner that no invention is shown over Bacon. It may well be that Bacon did not appreciate the importance of vitamins in the final product; but he unquestionably pointed out the high vitamin content of spent distillers' mash and taught its use in the molasses-mineral salts process of yeast manufacture. The fact that he used the spent mash for increasing the yield of yeast rather than for increasing its vitamin content is immaterial, since a patent may not be granted for scientific explanations or discoveries of new uses for or unsuspected merit in old substances or processes. In re Ebert, 57 F.2d 356, 19 C.C.P.A., Patents, 1087; In re Langdon, 77 F.2d 920, 22 C.C.P.A., Patents, 1245; In re James, 83 F.2d 313, 23 C.C.P.A., Patents, 1124. The proportion to be used in the light of results desired was a mere matter of laboratory experiment, and not a critical matter producing a new and unexpected result of which invention could be predicated, as was the amount of oil to be used in the froth-flotation process of the minerals separation patent dealt with in Minerals Separation, Ltd., v. Hyde, 242 U.S. 261, 37 S.Ct. 82, 61 L.Ed. 286. It was evident, as the claimant Allen admitted on cross-examination, that the more mash used the more vitamins would be obtained, but that too much mash would decrease the yield of yeast. The problem was to use an amount which would give the required vitamin content without unduly decreasing the yield. The solution of this problem was a mere matter of experiment involving nothing more than the skill of a laboratory technician. This is not invention within any proper meaning of that term.

A question arises as to whether the claims are not fatally vague and indefinite, as they do not specify the proportion of spent mash to be used in the process, but merely the lower limits, leaving the proportion, except for this, entirely at large, although it is admitted that the use of too much is fatal to a satisfactory yield. Cf. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. ——. We need not pass upon this question, however, as we find no invention in the process.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.