Application of Dorris E. SPEARS.
Patent Appeal No. 6143.

United States Court of Customs and Patent Appeals.
July 1, 1955.

Emory L. Groff, Washington, D. C. (Albert J. Kramer, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1 and 2 of appellant's application for a patent on new and useful improvements in a pin type flower holder. No claims were allowed and the appealed claims were finally rejected on the disclosure of the reference patent to Okai, 1,868,802, issued July 26, 1932.

The construction of appellant's device is obvious from a reading of the claims, of which claim 1 is illustrative:

"1. A holder for cut flowers comprising a supporting base member and a plurality of upstanding solid pins secured to said base member, said pins having each a blunt tip and an upward taper throughout its length and being substantially in the general shape of a frustrum of a cone, whereby the stems of the cut flowers may be supported by wedging them between said pins and thereby maintaining the maximum cut surfaces of the stems exposed for

the adsorption of liquid, the blunt tips serving to prevent accidental injury of a person using the holder."

The alleged invention is thus further described in appellant's brief:

"* * * a pin type flower holder used by florists and housewives in setting and arranging a display of flowers in a bowl of water which may, in addition to the water, contain a dissolved agent beneficial to prolonging the flowers in a fresh condition. The water, with or without the dissolved agent, is absorbed by the cut ends of the flowers, if cut flowers are used, or by the root system of the flowers if the entire plant is used."

The patent to Okai, as described in his specification, relates to an invention for the accommodation of a symmetrical bouquet of cut flowers in a bowl of less depth than the length of the stems of the flowers. Okai provides means whereby the flowers may be thus fixed in various arrangements for the purpose of holding them in true form when placed in the bowl or basin, which is adapted to supply the stems with water to keep the flowers fresh. The patented device consists of a weighted plate having flower stem retainers in the form of pins, the points of the pins being guarded with lattice work having openings through which the user can put his or her fingers to arrange the cut flower stems with respect to the flower holder and the pins.

Okai's invention is adapted for construction in various forms. The form described in the specification, however, is made of two pieces fitted together and secured by welding. The holder frame consists in a downwardly flaring band. The walls of the band "are aslant upwardly at an acute angle to the base so that lines of direction from the pin points and from the rim of the band, and from the lacings of the lattice crown, fall well within the base of the weight plate." Okai states in his specification:

"An object is to make it easy for the arranger to place each flower in exactly the position he determines, and, by the use of his fingers alone, to fasten each flower stem in the place and at the angle required to give the intended artistic effect; and to allow him to take out and replace, and to rearrange, and add to the number of such flowers, as his fancy may dictate or suggest."

Counsel for appellant sets forth the grounds upon which he relies here for the patentability of the appealed claims:

"Prior flower holders of this type, as exemplified by the patent to Okai * * *, consist essentially of a base member and a group of sharp pointed pins projecting upwardly therefrom and upon which the flowers are impaled.

"Appellant conceived the idea that holders of this type are objectionable because the impaling of the flowers on the pins frequently results in a destruction of the ends of the flower stems, particularly in the case of stems of small diameter, and is otherwise undesirable because persons frequently injure themselves in placing flowers upon the sharp pointed pins or even in picking up a flower holder of this type or otherwise manipulating it.

"Appellant conceived the further idea that these deficiencies could be remedied by the use of an entirely different type of pin, namely, pins in the form of conical frustrums rigidly secured to a solid base member."

The examiner pointed out in his rejection of the appealed claims that while the tips of the tapered pins disclosed by Okai are pointed so as to facilitate the impaling of the stems of cut flowers thereon, nevertheless the device of Okai does not preclude, if so desired, the wedging of flower stems between the pins, without any change in the structure defined by Okai. The examiner further asserted that the structure defined by claim 1 is fully shown in Okai, with the

single exception of the "blunt tip" on each pin, a special feature upon which appellant thus relies to endow the claims with the quality of invention: "Since the blunting of the pins is clearly new, and since it serves a useful purpose, it comprises a definite contribution to the art and cannot be regarded as an immaterial variation."

The examiner made these statements, subsequently adopted and approved by the board, with respect to the rejection of the appealed claims:

"'Where there has been use of an article * * * more than a new advantage of the product must be discovered in order to claim invention. * * * It is not invention to perceive that the product which others had discovered had qualities they failed to detect.' General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, [66 S.Ct. 81, 84, 90 L.Ed. 43] 67 U.S. P.Q. 155.

"With reference to the 'blunt tip' the function attributed thereto in the claim is 'to prevent accidental injury of a person using the holder.' Insofar as the use of appellant's device is concerned in the wedging of the flower stems between the pins it is immaterial whether the pins are blunt tipped or pointed as in Okai. In no way does the shape of the end of the pin enter into the wedging action of the flower stem with the tapered sides of the pin. Thus in Okai the flower stems can be wedged between the pins in exactly the same manner as they are wedged between appellant's pins. Accordingly the mere expedient of rendering the ends of Okai's pins blunt would not involve invention. It is not disputed that blunting the ends of the pins would prevent accidental injury to a person using the holder, however, this does not affect the mode of operation and use of the device. It being considered that the 'blunt tips' defines no patentable

novelty over Okai, the function attributed to the same is immaterial."

Claim 2, differs from claim 1 solely in the limitation which calls for "a plurality of upstanding solid pins integral with said base members." The examiner held with respect thereto that in view of the molded anchoring of the pins for a similar purpose in Okai, no invention by appellant was seen to reside in the described limitation.

The board was in full agreement with the examiner's rejection of the claims for the reasons given by him. In its rejection of appellant's contention for patentability for the claimed provision for the blunt ends for the pins to avoid the dangers inherent in the use of devices having pointed ends, the board held that such expedient was a concept "so obvious to one skilled in the art as not to involve the exercise of invention." "Any other view, in our opinion," the board further stated, "would give undue importance, in a patentable sense, to the adoption of routine expedients."

On a request for reconsideration, the board granted the appellant's petition to the extent of reviewing its original decision, but denied the petition with respect to making any change in such decision.

Appellant argues here that the conclusions reached by the board lack a factual basis; that the board assumed a fact which did not exist in holding that flower stems can be wedged between the pins of Okai; and that there is nothing in the disclosure of Okai to define his pins as being so tapered or so erected as to enable any person to possibly wedge the stems of cut flowers therebetween.

■ The drawings accompanying the specification of Okai, the Patent Office held, clearly define stems of pins which taper upwardly throughout their length from the base member to the sharp point of the respective pins. For the purpose of demonstrating anticipation, the Solicitor for the Patent Office prop-

erly cites In re Bager, 47 F.2d 951, 18 C.C.P.A., Patents, 1094; and In re Launder, 212 F.2d 603, 605, 41 C.C.P.A., Patents, 887, to the effect that in searching for the disclosure of a cited reference resort may be had not only to the words of description contained in the specification but also to the drawings which accompanied the inventor's application for a patent. We accordingly present herewith Fig. 6 of Okai's drawings on the point in issue:

The depicted elements of Fig. 6 were thus described in the decision of the board:

"Okai discloses a basin flower holder comprising a circular band 1 within which a metal base 3 is welded. The base has embedded therein flower retaining pins 5 having pointed ends projecting a substantial distance above the base. As illustrated in Figure 6 of the drawing flower stems (15) may be forced down over the points of the pins to be supported thereon in upright position. Use of the device is facilitated by 'lacings' 14."

We are unable to find sufficient evidence of any development in appellant's device which demonstrates the quality of invention. In the case of In re Launder, supra, this court, among other things, held: "Of course it is a matter of common knowledge that to taper a retaining pin so that a wedging action is produced is a common mechanical expedient."

■■ Even though appellant's structure differs from that defined by Okai, it does not follow as a legal result that because the features claimed by appellant are otherwise new and useful that they are therefore patentable. Thompson v. Boisselier, 114 U.S. 1, 5 S.Ct. 1042, 29 L.Ed. 76. It is not invention to perceive that the product which others had produced possessed qualities they failed to detect. General Electric Co., supra. A patentee is entitled to every use of which his invention is susceptible. In re Crews, 36 F.2d 135, 17 C.C.P.A., Patents, 697.

■ It appears to us, as it did to the tribunals of the Patent Office, that appellant's device contains no feature or produces no result that would not be obvious from the teachings of the cited reference or as a matter of common knowledge. In re Dalzell, 152 F.2d 1013, 33 C.C.P.A., Patents, 808; In re Craige, 189 F.2d 620, 38 C.C.P.A., Patents, 1114, and authorities therein cited.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate in place of GARRETT, Chief Judge.