42 C.C.P.A. (Patents)

**Application of DUCCI.**
**Patent Appeal No. 6131.**

United States Court of Customs
and Patent Appeals.
July 1, 1955.

As Modified on Petition for Rehearing
Sept. 28, 1955.

Bauer & Seymour, New York City (John L. Seymour and D. A. Bauer, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office rejecting, in its original decision and on reconsideration, all the claims in appellant's patent application entitled "Multicellular Vitreous Materials." In the brief for the appellant, his counsel allege here that the invention defined by the 15 rejected claims is comprehensively stated in the following two claims:

"3. As an article of manufacture, a multicellular glass product constituted by glass having a coefficient of linear expansion which is lower than about $65 \times 10^{-7}$.

"13. A method for the manufacture of multicellular glass which comprises mixing pulverized glass having a coefficient of linear expansion lower than about $65 \times 10^{-7}$ with a gas forming substance responsive to the temperature of softening of such glass, heating the mixture to the softening temperature of the glass, and cooling the resulting swollen material."

The board in its decisions relied in part upon the following references cited by examiner:

| | | |
|---|---|---|
| British Patent | 447,805 | May 26, 1936 |
| Slayter | 2,119,259 | May 31, 1938 |
| Long | 2,123,536 | July 12, 1938 |
| Lambert | 2,143,951 | Jan. 17, 1939 |

The board, under the authority conferred upon it by Rule 196 (b) of the Rules of Practice in the Patent Office, included the following publication and patents as additional references:

Glass—The Miracle Maker—by C. J. Phillips, Pitman Publishing Corp., 1941, pages 93, 94, and 95,

| | | |
|---|---|---|
| Sullivan et al. | 1,304,622 | May 27, 1919 |
| Sullivan et al. | 1,304,623 | May 27, 1919 |

With respect to that action of the board, and the qualifications of its members, we quote the following excerpt from the brief of the Solicitor for the Patent Office:

"Rule 196 (b) recites that 'Should the Board of Appeals have knowledge of any grounds not involved in the appeal for rejecting any claim, it may include in its decision a statement to that effect with its reasons for so holding, which statement

shall constitute a rejection of the claims.' Under the requirements of 35 U.S.C. (1952) 7, the examiners-in-chief are 'persons of competent legal knowledge and scientific ability.' This Court has recognized the right of the Board to reject claims on grounds not applied by the examiner. In re Heritage, 153 F.2d 111, 33 C.C.P.A., Patents, 783."

The foregoing excerpt from the solicitor's brief was invoked because of arguments presented in the brief of appellant as to the respective grounds of rejection advanced not only by the examiner but also by the board:

"1. The Board of Appeals departed from the practices of an appellate tribunal and acted as a tribunal of first instance, citing new references and reasons of rejection. The new references are famous and were certainly known to the Examiner: They do not relate to bubbly glass. They do not teach anything about bubbly glass or about the process of making it. The Board confused the making of ordinary 'pyrex' solid glass cooking dishes with the process of making bubbly glass: The Examiner had not made that error.

"The skilled people in the industry had not found in the Sullivan 'pyrex' patents the solution to the bubbly glass problem; not even though they were issued in 1919:

"Similarly, even with the present invention before him, the Examiner did not deem the 'pyrex' patents to be anticipatory.

"The Board, the least expert of all the groups before whom the pyrex patents have been displayed since 1919, alone thought them to be pertinent. However, the Board admittedly did not find an anticipation. It only found an obscure reference from which it could, having the present invention written out as a guide, by a clever series of deductions * * *, conclude that it 'involves no invention to use glass having a linear coefficient of expansion which is below 65 x 10⁻⁷' ".

In view of the extraordinary contribution to the art alleged by appellant, we have scrutinized the record with unusual care to see whether it contains any of the errors asserted on this appeal. Appellant in his specification and brief respectively describes the background which forms the basis of the article and the method defined by the limitations of the claims on appeal. We quote these pertinent excerpts from different pages thereof:

"The present invention relates to the manufacture of multicellular vitreous products which, as is known, are characterized by their properties of lightness, thermic and acoustic insulation, resistance to moisture and chemical agents, such qualities being highly valuable, especially for building purposes.

"It is known that these products are obtained in a general way by causing the development of gaseous bubbles within a vitreous material which is molten or at least brought to a temperature above its softening point, and thereafter by cooling the resulting product.

"The formation of gaseous bubbles may be obtained in particular by processes using substances capable of developing gases by chemical reaction with one another or by chemical reaction of at least one substance with some of the constitutents of the vitreous material, or else by volatilization or decomposition of these substances.

"Among these methods, it is known to use a mixture of pulverized vitreous material with a finely divided reducing substance, such as carbon, which is heated at a temperature at which the glass particles become soft and are joined one to the other simply by contact, the carbon, by reacting with the vitreous material at said temperature causing the formation of the gaseous bubbles within the vitreous material."

* * * * * *

"The present invention has for its object to produce multicellular vitreous

products from a vitreous material having a low expansion coefficient, i. e., a coefficient of linear expansion practically lower than about $65 \times 10^{-7}$.

*  *  *  *  *  *

"The usual glasses heretofore used in the manufacture of multicellular glass have a relatively high coefficient of linear expansion, of the order of $80 \times 10^{-7}$ to $120 \times 10^{-7}$. Considering that a glass block in the massive state is already by itself a bad conductor of heat, this property is considerably increased for multicellular glass, for which it constitutes one of the primary desired properties.

"This property is due, on the one hand, to the presence of the cells which oppose heat transmission and, on the other hand, to the fact that the propagation of heat through the glass itself, along the partitions between the cells, is hindered by the very thin transverse section of these partitions. Under these conditions, when the inside of the article begins to harden, the outside is already hard and opposes the free contraction of this inner part so that tensions occur with the risk of breakage in the article."

Appellant's counsel contending, among other things, that Ducci by the instant invention "has taught the art what it did not know" before, and that the tribunals of the Patent Office erred in failing to acknowledge that fact, assert in their brief:

"Heretofore it has been thought by persons skilled in the art that all types of glass were equivalent and could be used equally without any of them showing a special advantage in the making of bubbly glass, or in the qualities of the bubbly glass made.

"The prior art cited by the Examiner and the prior art cited by the Board of Appeals alike is devoid of any statement that would show one type of glass to be better for making bubbly glass than any other type.

"The applicant Ducci has discovered that there is a special type of glass whose use in the process reduces the length and size of lehrs, reduces the annealing time to one-third or less of its former extent, from 18 hours to 6 or even two hours for a piece of bubbly glass 10 cm. thick, reduces the investment in machinery, produces a superior bubbly glass, makes it possible to apply bubbly glass where it never could be applied before."

*  *  *  *  *  *

"It is in the nature of an act of genius that he discovered that a special category of glasses exists and that it is classified by its coefficient of linear expansion, not by its rate of heat transfer. This category is stated in the claims. It has a linear coefficient of expansion less than about $65 \times 10^{-7}$."

The Solicitor for the Patent Office in his brief offers the following pertinent notation regarding the significance of the term relied upon by appellant to endow his claims with patentability.

"Appellant * * * includes within the glasses he utilizes in making his articles all having a coefficient of linear expansion "practically lower than about $65 \times 10^{-7}$," which is to say lower than about .0000065. (The exponent of 10 is equal to the number of decimal places through which the decimal point has been shifted. See second paragraph, page 137, Chemical Engineers' Handbook, Second Edition (McGraw-Hill Book Company, Inc., New York and London, 1941). * * *"

Appellant in support of its alleged contribution to the advancement of the art submitted an affidavit executed by the affiant Gordon relative to the reduction of the time and the quantity of equipment required for the effective cooling of the glasses utilized in his process. The factual situation thus established, the board held, disclosed that while appellant might have made an improvement, in reality he had achieved nothing that was not to be expected from the disclosure of the cited art and the lessons to be derived from its teaching by any person having ordinary skill in the art.

Several of the cited patents were regarded by the tribunals of the Patent Office as principal references. Those include the British patent of record, together with the patents to Long, Slayter, and Lambert. The pertinent disclosure of the British Patent was said by the board to be essentially the same in the patent to Long, as thus defined in this excerpt from the British patent contained in the board's decision:

"The invention relates to a process for the manufacture of multicellular glass. It consists in heating, to the temperature at which the glass becomes soft and the glass particles concrete or are joined to each other by simple contact, a mixture of crushed glass with one or more powdered substances capable of developing gases or vapours at this temperature, (by reaction of these substances with the glass, or by reaction between the added substances alone, or by simple decomposition or release of occluded gases or vapours) and cooling the mixture thus heated when the gases or vapours produced have augmented its volume in the desired proportions for obtaining a predetermined apparent density."

The Solicitor for the Patent Office points out that the quoted excerpt just described recites all the procedural steps defined, for example, by the limitations of claim 13 on appeal. The Slayter patent discloses the formation of blocks from bubbly glass under vacuum and cooling them in an annealing lehr or oven. Owing to the vacuum within the block, it has a high insulating value. Lambert discloses a reduction process of pressure in molding bubbly glass into blocks and their subsequent slow cooling.

The quality of glass claimed by appellant as having a coefficient of linear expansion lower than about $65 \times 10^{-7}$ is said to be disclosed in all the secondary references which were added by the board as hereinbefore described. The publication, Glass—The Miracle Worker, reports that with trivial exceptions, most substances, including glass, expand when heated and contract when cooled; that the mean linear coefficient of expansion is there defined as the change in length per unit of length per degree change in temperature; and that "when high thermal endurance is necessary, the coefficient must be small."

The publication also contains a formula expressing in a "complicated" manner the mean linear coefficient of expansion for a glass rod of a given length over a certain temperature range, but the complicated expression thus set forth in the reference, is also fully explained therein.

The specifications in the respective patents to Sullivan et al., hereinafter identified as Sullivan, disclose glasses which meet the limitations, for example, of claims 3 and 13, which call for a "glass having a coefficient of linear expansion which is lower than about $65 \times 10^{-7}$." We quote the following excerpts from Sullivan 1,304,622:

"The glass compositions here disclosed are sodium-borosilicates, in which the several ingredients are so proportioned that the coefficient of expansion is kept very low, i. e., the linear co-efficient is less than .000004; that the stability of the glass is maintained; that "softness" is obtained and that disintegration is prevented.

&ast; &ast; &ast; &ast; &ast; &ast;

"As examples of glass composition falling within the scope of this invention we have the following formulae:—

|  | A. | B. | C. |
|---|---|---|---|
| Silica | 70% | 80.6% | 90% |
| Alumina | 6 | 2 | 1 |
| Boric oxid | 20 | 13 | 6 |
| Sodium oxid | 4 | 4.4 | 3 |

"The glass above given as B has been found to possess in a very high degree the valuable properties above named, its linear co-efficient of expansions being .0000035, and its thermal conductivity being .0028.

The expansion co-efficient of glass A is .0000037 while that of C is about .0000023."

The values of the compositions A, B, C, and D, from certain data furnished by Sullivan, are thus defined in the brief of the solicitor:

| Compositions | Linear Coefficients of Expansion |
|---|---|
| A | .0000037 $(37 \times 10^{-7})$ |
| B | .0000035 $(35 \times 10^{-7})$ |
| C | .0000023 $(23 \times 10^{-7})$ |
| D | .0000022 $(22 \times 10^{-7})$ |

The specification of Sullivan 1,304,623 ascribes the low expansivity of the described glass to their high silica contents. Both patents refer to thermal endurance as the power to undergo sudden cooling without fracture of the glasses. From the disclosures of Sullivan and other teachings therein set forth the board derived the conclusion that the thermal endurance of glass is greater as its coefficient of linear expansion is lowered.

More specifically, the solicitor has this to say in his brief, discussing the disclosure of the first of the two Sullivan patents, numerical references to pages of the record being here omitted:

"The Board held that the superior properties of the glass appellant uses 'are due to a great extent to its linear coefficient of expansion.' The accuracy of this quoted statement is attested, *inter alia,* by claims 1 and 6 of patent No. 1,304,622. That patent describes and claims a heating vessel of 'Pyrex,' which must undergo sudden cooling without fracture. Such a vessel is defined in claim 1 as 'made of glass of low expansion'; the similar sole limitation in claim 6 is that the pressed baking dish is 'made of glass having a linear co-efficient of expanison less than .000004.' The value of .000004 $= .0000040 = 40 \times 10^{-7}$. As representative of the claims on appeal, claims 3 and 13 call for 'glass having a coefficient of linear expansion lower than about $65 \times 10^{-7}$.' The value,

$40 \times 10^{-7}$ is 'lower than about $65 \times 10^{-7}$.'"

There were four grounds of rejection applied in the rejection of the appealed claims. The first two are all that need be considered here. They are both contained in the following paragraph of the board's decision:

"Under the provisions of Rule 196 (b), Rules of Practice, we are constrained to hold that claims 3 through 8, 13, 20, 21, 22, 23, 25, and 26 are unpatentable over the British patent or Long in view of the disclosures on pages 93, 94, and 95 of Glass, the Miracle Maker and in the Sullivan patents, and that claims 14 and 24 are unpatentable over Lambert or Slayter in view of the same secondary references."

The third ground of rejection, which relates to the method claims on appeal, is however a special source of controversy here. With respect to them the board said:

" * * * The method recited in these claims is substantially the same as the method disclosed in these references with the exception that a different type of glass is used therein. But this glass is analogous to the glass of the references and it is quite evident that it can be converted to multicellular glass by the method disclosed in the references. Under these conditions the invention does not reside in the method, as indicated by the following holding in In re Craige, 650 OG 324; 189 F.2d 620, 38 C.C.P.A., Patents, 1114; 90 U.S.P.Q. 33; 1951 CD 433:

" ' * * * It is further well settled that the substitution of a new and analogous material in an old method or process does not render the process patentable where the improved result is due solely to the quality of the material used.' "

Appellant declares the board was clearly erroneous in its decision and urges here that "the doctrine of In re Craige [189 F.2d 620, 38 C.C.P.A., Patents 620],

90 U.S.P.Q. 33 * * * turned upon the doctrine of In re Thuau, 135 F.2d 344 [30 C.C.P.A., Patents, 979], 57 U.S.P.Q. 324, which held that new use of old materials were not patentable. It has been accepted by the courts and the patent bar that Section 100B of the Patent Act of 1952 overturned the Thuau doctrine, and, of course, the Craige decision with it."

◼ Counsel for appellant, having made the quoted statement, has rested on his oars and cited nothing whatever to support his views. The solicitor has thus relied on certain expressed views which define the position of the Patent Office on the point in issue:

"* * * With respect to said Section 100(b), the latest published view on the matter is that 'the background of the amendment gives reason to assume that a newly discovered use for a known substance, machine or process is still only patentable if it is not merely analogous or cognate to the uses heretofore made.' (The New United States Patent Act in the Light of Comparative Law, Stefan A. Reisenfeld, 34 Journal of the Patent Office Society 406, 416, June, 1954.) To this view the Commissioner subscribes."

In the absence of authority to the contrary, we know of no reason to dispute the authenticity of the foregoing views expressed by Mr. Reisenfelt and the Commissioner of Patents. The Journal of the Patent Office Society is to be commended for this valuable contribution in aid of the complicated work of the Patent bench and bar.

◼ The record and briefs are replete with many additional arguments but we think that the contentions of the appellant and the tribunals of the Patent Office are clearly defined by what we have hereinbefore set forth. On that basis we agree with the action of the board and conclude that in view of the cited art, appellant has done only that which is obvious to any person skilled in the art without the exercise of the inventive faculty.

Affirmed.