JOSEPH BANCROFT & SONS CO.,
Plaintiff,

v.

Robert C. WATSON, Commissioner of
Patents, Defendant.

Civ. A. No. 705-57.

United States District Court
District of Columbia.

Jan. 27, 1959.

C. Willard Hayes, Washington, D. C., William P. Cole and John T. Synnestvedt, Philadelphia, Pa., for plaintiff.

Joseph Schimmel, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents, under 35 U.S.C. § 145, to secure an adjudication that the plaintiff is entitled to a patent on an application that has been rejected by the Patent Office.

The application in question is Serial Number 171,752, filed on July 1, 1950, by Albèrt C. Nuessle and Peter J. McKone, Jr., and assigned to the plaintiff, Joseph Bancroft & Sons Co. The alleged invention relates to the business of finishing textile fabrics. Specifically, it relates to the process to which fabrics are subjected after they are manufactured, and which consists of cleaning them, and possibly impressing designs or patterns on them by means of passing them through rollers of a type used for that purpose. There are three claims involved in this litigation. Claims 20 and 21 are process claims, and Claim 26 is a claim on the composition that is used in the process.

In connection with the operation to which reference has been made, it is necessary to use a solution through which the fabric is passed. This solution contains resin. For some time the industry had been troubled by the fact that the resin, which is used in its liquid form, becomes solidified as a result of heat, while the fabric is being passed through the rollers, and deposits of resin are gradually accumulated on the rollers. As a result, every few hours it is neces-

sary to stop the operation in order to clean the rollers. This may take as long as three hours or more.

The plaintiff, which is the biggest concern engaged in the business of finishing fabrics, or at least conducts a majority of the business, through its employes, was working for some years in an endeavor to solve this problem and eliminate this difficulty. A number of solutions were explored, but all to no avail. Finally, it was discovered by the inventors that by using a different chemical in the solution employed in connection with the operation than the one that had been previously utilized, the formation of the resin deposits on the rollers would be eliminated. This chemical, which was substituted, by the inventors, is known as cyclic urea, and supplanted the use of a chemical known as urea formaldehyde, and other similar compounds that had been previously employed.

The patent application points out this advantage of the use of the substitute chemical. On page 4 of the application, attention is called to the fact that:

> "Cyclic urea reacts without the formation of an insoluble resin and that because of this, the tendency of the compound to form deposits on the mechanical equipment is greatly diminished."

Cyclic urea as a composition of matter was not new, and it is not contended that it was new. The alleged invention of the plaintiff's assignors consists in adapting the use of this composition to the process previously known. The evidence indicates that the use of cyclic ureas came into use as soon as the discovery was made, and has replaced chemicals theretofore employed, and that the industry is no longer confronted with the problem of the formation of resin deposits on the rollers used in the finishing processes.

It is claimed by the Commissioner of Patents, however, and it is not denied substantially, that the steps in the process, as enumerated in Claims 20 and 21 of the application, are the same steps

as those of the prior art, and were disclosed in the patent to Bener, Number 2,121,005, issued on June 21, 1938. It is urged that for this reason no patent may issue on the process claims involved in this action. It is also pointed out in behalf of the Commissioner of Patents that cyclic urea is not a new chemical; and, again, that is not denied. It was disclosed in the patent to Hoover, Number 2,373,136, issued on April 10, 1945.

There has been a basic principle of law in the field of patents that a new use for a well-known or at least previously known process, machine, article of manufacture, or composition of matter is not patentable. It has been argued that what the inventors have done here is to harness an old compound to a new use. This general principle has been upheld and applied in a series of cases. Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 473, 55 S.Ct. 449, 79 L.Ed. 997; General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242–247, 248, 249, 66 S.Ct. 81, 90 L.Ed. 43; Allen v. Coe, 77 U.S. App.D.C. 324, 135 F.2d 11; Application of Spears, 223 F.2d 956, 959, 42 C.C.P.A. 1028.

In fact, in a celebrated litigation, what might be said to be the converse was ruled by the Supreme Court. Thus, in Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 54 S.Ct. 752, 78 L.Ed. 1453, it was concluded that if a person make an invention or discovery accidentally, and does not realize its significance or its usefulness, and makes no use of it, nevertheless, he is entitled to a patent as a prior inventor as against a later inventor, who, as a result of assiduous efforts, developed the device in question, understood its usefulness and immediately applied it for that purpose.

■ The question arises, however, whether on this point the law has been changed by the 1952 codification of the patent laws. This statute is, in effect, more than merely a codification, but introduces some new provisions into the law of patents. 35 U.S.C. § 100, sub-

section (b), in defining the word "process", for the first time, provides that the term

"* * * includes a new use of a known process, machine, manufacture, composition of matter, or material."

In other words, a new use of a hitherto known process or composition of matter may be patentable, provided, of course, all the other requisites of patentability are met. The mere fact that what the inventor seeks to patent is a new use of a previously known invention is no longer a bar to a patent.

It may be said, generally, that there are expressions to the effect that the new statute sought to lower the standards of patentability. The well-known opinion of Judge Learned Hand, in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 535, expressed the view that one of the purposes of the Patent Act of 1952 was to restore the law to what it had been prior to a series of decisions of the Courts, the effect of which had been to raise the test of patentability. The Court of Appeals for the District of Columbia Circuit in a footnote, to be sure, expressed approval of Judge Hand's opinion, L–O–F Glass Fibers Co. v. Watson, 97 U.S.App.D.C. 69, 76, 228 F.2d 40, 47, footnote 14. On the other hand, the Ninth Circuit has apparently taken the opposite view.[1]

For the purposes of this case, it is not necessary to rely on the view that the standards of patentability have been lowered by the new statute, as a general matter. It is sufficient to apply Section 100(b), above quoted, which, in effect, has abrogated the principle laid down in a series of cases to the effect that a new use of an old process or an old device is not patentable on that ground alone. What we are confronted with in the two process claims is not a new process, as such, but the application of a previously known chemical to an entirely new and different use, and making it a participant in the process. There do not seem to have been very many decisions construing the new provision to which reference has been made, but there are two cases decided by the Court of Customs and Patent Appeals in regard to the matter that appear to be pertinent.

In Application of Ducci, 225 F.2d 683, 688, 42 C.C.P.A. 1008, it was recognized that:

"A newly discovered use for a known substance, machine or process is still only patentable if it is not merely analogous or cognate to the uses heretofore made."

In Matter of Application of Hack, 245 F.2d 246, 248, 44 C.C.P.A. 954, the same Court, in an opinion written by Judge Jackson, expressly stated that the new statute recognizes: "that the discovery or invention of a *new use* of a known process machine, manufacture, composition of matter or material may be patentable." Judge Jackson quite properly points out, however, that a claim on such a new use must be in the form of a method or process claim. It was held that in that case, the applicant was not entitled to a patent on the ground that he presented product claims. In the case at bar, the two claims that are now under discussion are process claims, and they, in effect, seek to patent a new use for cyclic urea.

Necessarily, it is not every new use that is patentable. The discovery of the new use must involve the inventive faculty. It must be one that could not have been made as a result of mechanical skill by a person reasonably skilled in the art. To use a term that was framed some years ago by Judge Hand, it must be more than the work of a routineer.

In this case, the evidence indicates that for some time the industry had been groping for a solution of a difficult problem that confronted it as a practical matter. Various possibilities were tried, but to no avail. Finally, the plaintiff's assignors solved the problem. Their

1. Bergman v. Aluminum Lock Shingle Corp., 251 F.2d 801, 802; Trenton Industries v. A. E. Peterson Mfg. Co., D.C., 165 F.Supp. 523, 527.

solution has been largely adopted by the industry, resulting in a successful reduction of costs of operation.

To be sure, as has often been said, commercial success in and of itself is not proof of invention, and does not justify the issuance of a patent if it is manifest that no element of invention exists. The fact, however, that the industry had been searching for a solution of a difficult problem, that no one had succeeded in arriving at a successful result, that the applicants finally solved it, and that their advance was promptly accepted by the industry and met with commercial success, is evidence of the fact that the solution was not obvious to a person reasonably skilled in the art, but involved the exercise of the inventive faculty. For these reasons, the Court is of the opinion that the plaintiff is entitled to a patent on Claims 20 and 21.

A different group of considerations are applicable to Claim 26, which seeks a patent on a composition of matter. One of the elements of the composition, though old in and of itself, is new as used in connection with the other elements of the compound. The element thus introduced is cyclic urea, which is employed in the processes covered by Claims 20 and 21.

It is contended by the Commissioner of Patents, and was so held by the Examiner and the Board of Appeals of the Patent office, that the patent to Watkins, Number 2,238,839, issued on April 15, 1941, discloses the composition here in question, except that instead of including "cyclic urea" as one of its elements, it uses "commercial resin syrup", which constitutes urea of other types. The Examiner and the Board both held that the substitution of cyclic urea as one of the elements of the composition did not rise to the dignity of an invention. Their conclusion is re-enforced by the fact that the application discloses no particular reason, and does not indicate any advantage that is to be derived from the substitution of one element for the other. While, to be sure, this circumstance is not fatal, nevertheless, it is of some weight in connection with determining whether this Court should hold that the Patent Office erred in rejecting this claim. The Court does not find any sufficient reason for reaching a conclusion that the Patent Office erred in this regard.

Accordingly, the Court will render judgment for the plaintiff in respect to Claims 20 and 21, and judgment for the defendant in respect to Claim 26.

Counsel will please submit proposed findings of fact and conclusions of law and a proposed judgment.