SUN CHEMICAL CORPORATION, Herman B. Goldstein, and Michael A. Silvestri, Plaintiffs,

v.

Edward J. BRENNER, Commissioner of Patents, Defendant.

Civ. A. No. 234–66.

United States District Court
District of Columbia.

May 18, 1967.

George H. Mitchell, Jr., and Eugene Sabol, Washington, D. C., for plaintiffs.

Raymond E. Martin, Washington, D. C., for defendant.

## OPINION

HOLTZOFF, District Judge.

The Court has before it an action against the Commissioner of Patents to secure an adjudication that the plaintiffs are entitled to a patent under an application which has been rejected by the Patent Office. The application was filed by Herman B. Goldstein and Michael A. Silvestri on June 25, 1963 and is numbered 290337. It was assigned to the Sun Chemical Corporation, which is one of the plaintiffs in this action. Two other plaintiffs are the inventors.

The invention relates to a process of making garments that maintain a permanent press. The manufacture of such garments appears from the evidence to be an industry that has been developed in recent years and has become wide spread because of convenience to the ultimate consumer. The evidence indicates that there are a number of processes or methods for obtaining permanent press in garments. The principal method used in the industry consists of impregnating the fabric out of which the garment is manufactured with a chemical of the resin type. Several problems arose in the course of using this procedure. It was important that the fabric be of a type that would hold a permanent press after it is imparted to the garment. At the same time it was necessary to prevent

618

premature reaction on the part of the resin with which the fabric is impregnated, because if such an eventuality occurred the material would lose its ability to maintain a permanent press after the garment is manufactured.

The manufacture of any garment consists of two separate stages: first, the manufacture of the fabric; second, the preparation of the garment out of the material. These two stages may be separated by long intervals of time and place. Consequently it is essential that during the intervening period, the property imparted to the fabric by its impregnation with the resin should not be lost. Moreover, it is vital to prevent the material from being prematurely creased in a permanent manner.

The invention involved in this case consists in the use of a chemical of the ethylene urea type known as imidazolidone, as the composition with which to impregnate the fabric. It was found by the inventors that if this composition is used for that purpose, the problems resulting from the risk of premature reaction of the chemical in the fabric, as well as the possibility of a permanent crease being imparted to the fabric precipitously, are avoided. The garment can then be successfully manufactured with a permanent press imparted to it after the garment is completed. The invention proved successful. The undisputed evidence, which has not been either controverted or impeached, amply leads to the conclusion that the industry has adopted this invention on a large scale. While other means for manufacturing garments with a permanent press are used, the evidence indicates that the use of imidazolidone for that purpose is predominant. The Sun Chemical Corporation is a manufacturer of imidazolidone and sells this product to cotton mills that manufacture the fabric out of which the garments are made. In other words, the interest of the Sun Chemical Corporation is in the sales of the chemical that is employed in the process.

█ The Patent Office concedes the utility of the invention. The fact that the plaintiffs made a far-reaching advance in the industry is sufficiently established. It may well be that if there were no prior art, the plaintiffs' improved process would be patentable. It is not every commercial or industrial improvement, however, no matter how successful or far-reaching, that is necessarily patentable. There are many such steps that are not and cannot be protected by patents. The plaintiffs are not writing on a clean slate.

█ Under the present statute, a new use of an old material or process is patentable, 35 U.S.C. § 100(b). The form in which patent rights are granted on such a new use is a process claim. Joseph Bancroft & Sons Co. v. Watson, D. C., 170 F.Supp. 78. As was pointed out in the *Bancroft* case, however, the statute does not mean that every new use of an old process, machine, manufacture, composition of matter or material is patentable. A new use may be the subject matter of a patent only provided all of the other requisites of patentability are met.

The application in suit seeks the allowance of claims on a process of making garments with a permanent press. The vital step in the process is the impregnation of the fabric with imidazolidone. Incidentally, the plaintiff Sun Chemical Corporation has given a picturesque trade or commercial name to this composition, which it sells on the market as Perma-Fresh 183. The application states that "the compositions employed in our invention may be prepared by several different methods". We now come to a consideration of the prior art that was the basis of the ruling of the Patent Office in rejecting the application.

A patent to Warlock, No. 2974432, issued on March 14, 1961, discloses a process of impregnating fabric with resin in order to achieve the desired result. It is not limited to any specific resin. A patent to Hurwitz, No. 2950553, issued on August 30, 1960, likewise discloses a similar process.

The principal patent in the prior art relied upon is a patent to Goldstein, also

owned by Sun Chemical Corporation, No. 3049446, issued on August 14, 1962. This patent covers a process for manufacturing imidazolidone as well as the composition itself if manufactured by that process. In addition to confining the claims to the process and the resulting composition, the specification suggests certain uses for the compound. Thus, in column 2 at lines 5 and the following, it is stated: "We have furthermore discovered that our chemical composition is useful to improve the dimensional stability and to impart crease recovery properties in cellulose textiles." A similar statement is contained in column 6.

The Examiner of the Patent Office reached the conclusion that the use of the composition manufactured according to the earlier Goldstein patent in the process disclosed by Warlock and by Hurwitz was obvious and did not constitute a product of the inventive faculty. He states: "In view of the teachings in the cited claims of the Goldstein patent the Examiner takes the position that the process of Warlock is not rendered unobvious and patentable merely by substituting the acid-catalyzable resin in the patent claims of Goldstein for the resin in the Warlock method." This conclusion was approved by the Board of Appeals of the Patent Office. The Court finds no basis for disagreeing with the expertise of the Patent Office. The presumption of regularity has not been overcome, certainly not to the extent of a thorough conviction that the Patent Office erred.

In addition to the basis of the rulings of the Patent Office, there is an additional consideration that affects the public interest even though it may not alone constitute a ground for denying a patent. The Goldstein patent, which was one of the bases for rejection, is owned by the Sun Chemical Corporation. It was issued on August 14, 1962. By that patent the Sun Chemical Corporation has acquired a monopoly of manufacturing imidazolidone pursuant to a specified process and patent rights to imidazolidone itself as a product if manufactured by that process. As stated heretofore, the principal activity of the Sun Chemical Corporation in this regard is the sale of the chemical to mills that manufacture the fabric out of which permanent press garments are made. The application in suit would fortify and extend the rights of the Sun Chemical Corporation by a patent monopoly on the use of imidazolidone in the process of making permanent press garments. Not only would it expand the scope of the monopoly, but, naturally, it would also prolong its duration by a number of years. While the Sun Chemical Corporation is not subject to any just criticism for endeavoring to secure a prolongation and an extension of its monopoly rights, nevertheless a device of this type should not be rewarded with success unless the rights to the patent sought by the application are clear.

In conclusion, the Court finds no reason for overruling the Patent Office and accordingly judgment will be rendered dismissing the complaint on the merits.

Counsel will submit proposed findings of fact and conclusions of law.