Kenneth WHITE, Plaintiff,

v.

MAR–BEL, INC. and Mr. Dan Marshlack,
Defendants.

No. 72–641–Civ–T–H.

United States District Court,
M. D. Florida,
Tampa Division.

Nov. 29, 1973.

**1322**

Irwin C. Alter, of Alter, Weiss, Whitesel & Laff, Chicago, Ill., for plaintiff.

Stefan M. Stein, of Stein, Orman & Fisher, Tampa, Fla., for defendants.

## ORDER

HODGES, District Judge.

This patent infringement suit was instituted by the Plaintiff as owner of United States Letters Patent No. 3,496,-812 issued February 24, 1970, entitled "Plastic Cutting Device and Method." The Defendants denied infringement and alleged as a defense *inter alia* that the patent was invalid for failure to meet the requirements of 35 U.S.C.A. §§ 101, 102 and 103, respectively.

Plaintiff demanded trial by jury and the case was so tried. Special interrogatories were submitted to the jury following general instructions by the Court. The jury found that the Defendants infringed the patent; that the patent was valid; that the Plaintiff was entitled to recover $94,500.00 as compensatory damages; that Defendants' infringement was wanton and willful; and that, in consequences, the Court should treble the damages in entering judgment.

Plaintiff has moved for the entry of judgment in accordance with the verdict, including treble damages, plus an award of attorneys' fees as well as injunctive relief against future infringement. Defendants have moved for a judgment notwithstanding the verdict or, alternatively, for a new trial.

Upon due consideration of the pleadings, the pre-trial stipulation and order, the testimony and evidence adduced at trial, and the post trial memoranda and argument of counsel, the Court has determined that the Defendants' Motion For Judgment Notwithstanding The Verdict should be granted on the ground that the patent in suit is invalid as a matter of law by reason of "obviousness" within the meaning of 35 U.S.C.A. § 103.

■■ In order to avoid any misunderstanding concerning the scope of the Court's ruling, however, it seems prudent to first exclude those issues as to which the Court does not see fit to disturb the verdict. With regard to the issue of infringement, there was substantial competent evidence of ample quantity and quality to support the jury's finding and it should not be set aside. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969). Secondly, concerning the issue of validity, the law is settled in this Circuit that the requirements of §§ 101 and 102 as to novelty and utility (or anticipation) are essentially questions of fact:

> "If a patent was anticipated by the prior art it lacks novelty; and anticipation or lack of novelty is largely a question of fact. This court has held that novelty is lacking if *all* of the elements of the patent or their equivalents are found *in a single prior art structure* where they do substantially the same work in the same way." Van Gorp Mfg., Inc. v. Townley Industrial Plastics Inc., 464 F.2d 16, 18 (5th Cir. 1972) (emphasis in original text).

See also, Spray Bilt, Inc. v. Ingersoll-Rand World Trade, Limited, 350 F.2d 99, 103, n. 3 (5th Cir. 1965) concerning the more restrictive consideration of prior art under §§ 101 and 102, as contrasted with the broader review permitted under § 103.

■ Applying those principles to this case requires the same conclusion that was reached with respect to the issue of infringement, i. e., there was substantial competent evidence to support the jury's finding as to novelty and utility (§§ 101 and 102), and the verdict as to those issues must stand. Boeing Company v. Shipman, supra.

■ Consideration of the jury's verdict on the issue of invention or non-obviousness under § 103 is necessarily governed by a different standard. While certain factual inquiries must be made and resolved, obviousness is ultimately a question of law. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1966); Swofford v. B & W, Inc., 395 F.2d 362 (5th Cir. 1968); Van Gorp Mfg. Inc. v. Townley Industrial Plastics,

Inc., supra. The factual questions pertinent to this issue are: (1) the scope and content of the prior art; (2) the differences between the prior art and the patent in suit; and (3) the level of ordinary skill in the art. *Ibid.* In addition: "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." Graham v. John Deere Co., 383 U. S. at 17–18, 86 S.Ct. at 694. Finally, it must also be remembered that the patent is presumed to be valid and the Defendants have a heavy burden in overcoming that presumption. 35 U.S.C.A. § 282. E. g., Hobbs v. United States Atomic Energy Commission, 451 F.2d 849, 856 (5th Cir. 1971); Ingersoll-Rand Company v. Brunner & Lay, Inc., 474 F. 2d 491, 496 (5th Cir. 1973); Harrington Manufacturing Co. v. White, 475 F. 2d 788, 793–794 (5th Cir. 1973).

The patent in suit discloses a device for slitting or cutting laminated plastic, or similar sheet material. It recites that it has been common practice in the past to employ saws with expensive carbide blades for the purpose of cutting such materials, and that this method has two disadvantages: (1) it produces a frayed edge on the severed material requiring an extra step to deburr and smoothly finish the edge; and (2) it results in wear on the teeth of the carbide blades requiring frequent replacement. Thus, the patent continues, the object of the disclosed invention is to provide a new and improved means of slitting laminated plastic, overcoming those deficiencies inherent in the use of carbide saws.

The essential feature of the patented device is the use of three rotary disks with smooth peripheries, one being positioned above and between the others to form a cutter, specifically described in Claim 1 of the patent as follows:

"1. A plastic cutting device comprising: means for supporting plastic thereon,

a pair of cutters mounted to receive said plastic therebetween,

one of said cutters being a single disc having a smooth periphery,

the other of said cutters including a pair of spaced apart discs,

said one of said cutters having a portion received and disposed in the space between said spaced apart discs to form a die between said cutters, and

means for ratatably driving both of said discs in opposite directions,

whereby plastic can be moved along said means for supporting said plastic through said die formed in between said cutters to [form a single-line cut in] said plastic by deforming it between said one cutter and said other cutter having said spaced apart discs."

In attacking the validity of this claim on the ground of obviousness under § 103, Defendants principally relied upon the teachings of two earlier patents which were identified and analyzed by their expert witness, James W. Grace, as the nearest or most relevant prior art. These were the Hood patent (No. 182,-670; Defendants' Exhibit 15), and the Fore patent (No. 669,081; Defendants' Exhibit 16). The Hood patent discloses a series of rotary cutters which (with one possible exception discussed below) are so arranged as to peform substantially the same function in the same way as that disclosed by the patent in suit, i. e., the principle is the same and each of the elements in Claim 1 can be found in the Hood patent. The Fore patent also discloses essentially the same configuration of rotary disk cutters and supplies the additional element of an adjustable guide which is the equivalent of Claim 2 of the patent in suit. Each of the other elements of the remaining claims are also disclosed in other prior art (Defendants' Exhibits 17 and 19).

The lone element of the Claims not specifically found in the prior art is the concept of a "die" being formed by the space between the lower disks, so that the

interleaved upper disk does not actually touch the lower ones, and the resulting cut is described as a "deforming" process (rather than a shearing action). The Hood patent, for example, though otherwise identical in form and function, contemplates a touching of the interleaved, oppositely rotating disks so as to produce a shear.

Is the concept of a small separation (described as a "die") of such significance as to constitute an inventive and non-obvious improvement of the rotary disk cutting method, an old and familiar teaching of the prior art? The evidence (or the lack of evidence) requires a negative answer.

Neither the drawings, the specifications or the claims contain any reference to the size or permissible tolerance of the space between the interleaved edges of the upper and lower disks; nor is there any suggestion that such separation is necessary to the proper functioning of a device which practices the disclosed invention. The Plaintiff testified that his machine is designed with a clearance or tolerance of only one and one-half thousandths of an inch (.0015") between the cutters, and he declined to say that they "never" touched. To contend, therefore, in the context of this case, that a "die" is not a "shear" is to promote form over substance in an attempt to draw a distinction without a real difference.

Moreover, if that distinction *is* necessary to show patentable invention in relation to the prior art, then the Plaintiff is immediately thrust upon the horns of a dilemma. The weight of the evidence is to the effect that the Defendants' machine is constructed with touching disks which function as a shear. Thus, if the Plaintiff's "die" is the essential differentiating element of his invention, then there would necessarily be a lack of infringement since the Defendants' machine does not incorporate that element and does nothing more than practice what is taught by the prior art.

In Laitram Corporation v. Deepsouth Packing Co., 443 F.2d 928, 933 (5th Cir. 1971), the Court aptly observed:

"Considering the legal standards which are to be applied in such cases, we hold in sum that the trial court acted correctly when it refused to be led into such a technical consideration of the form of the separate elements in Laitram's patents as would submerge the overall substance of what these patents claimed to do and the subsantiality of the functions they described. Patent construction is seldom a matter of pure literalism."

Three additional factors should be noted lest it be assumed that the Court has ignored them.

First, the Plaintiff seems to contend at some points in the record that the application of his device to plastic materials, particularly laminated plastic, is a new and inventive process; and while the specification portion of the patent begins by saying that the invention "relates to cutting devices . . . for use in severing products, *such as* plastic . . ." (emphasis supplied), the claims themselves are each restricted to "plastic" materials, including the process Claims 10 through 12.

Pursuant to 35 U.S.C.A. 100(b), as added to the patent laws in 1952, a new use of a known process, method or machine may be patented, and the form in which patent rights are granted in such cases is the allowance of a process claim. See Joseph Bancroft & Sons Co. v. Watson, 170 F.Supp. 78 (D.D.C.1959), and Sun Chemical Corporation v. Brenner, 267 F.Supp. 617 (D.D.C.1967). Nevertheless, it is now well established that such patents or process claims must still meet all of the other requirements of patentability including nonobviousness under § 103, so that the claimed new use must be both non-analogous as well as nonobvious. The following summary in Grinnell Corporation v. Virginia Electric & Power Company, 401 F.2d 451, 453 (4th Cir. 1968), is a succinct

statement of the applicable principles and is dispositive as to this feature of the case:

"Grinnell puts heavy emphasis on 35 U.S.C. § 100(b) which includes within the term 'process' an new use of a known process or machine. However, a different use of a known machine or process is not a 'new use' if it is merely analogous or cognate to the uses theretofore made. Elrick Rim Co. v. Reading Tire Mach. Co., 264 F.2d 481, 486–487 (9th Cir. 1959), cert. denied 360 U.S. 920, 79 S.Ct. 1434, 3 L.Ed.2d 1535. Moreover, 'process' is not the same thing as invention. The definition of process to include a 'new use' does not constitute a new statutory class of patentable subject matter different from those set forth in Section 101 of Title 35 U.S.C. Sun Chem. Corp. v. Brenner, 267 F.Supp. 617 (D.D.C. 1967); Clinical Prods., Ltd. v. Brenner, 255 F.Supp. 131 (D.D.C.1966). The new use must still meet requisite standards of invention, Armor Pharmaceutical Co. v. Richardson-Merrell, Inc., 264 F.Supp. 1013, 1017 (D.Del. 1967), including that it not have been obvious to a person having ordinary skill in the art to which the subject matter pertains. 35 U.S.C. § 103. The application of an apparatus to a new use, with no change in the apparatus to adapt it to its new use, and with the apparatus functioning without change in its mode of operation, does not constitute invention."

Secondly, the Court has not lost sight of the presumption of validity favoring the patent nor the heavy burden which that presumption imposes upon Defendants; and, to be sure, consideration of this thread in the case leads to a somewhat fuzzy end insofar as the existing decisional law is concerned. At the outset, of course, the presumption and resulting burden of proof flow from the statute (35 U.S.C.A. § 282), and any additional guidance must be sought from the decisions. The degree of the burden

cast upon Defendants, for example, has been variously and sometimes inconsistently stated (see discussion in Hobbs v. United States Atomic Energy Commission, supra, 451 F.2d at 856), but the problem is largely one of semantics rather than substance. It is clear enough that the burden is a "heavy" one, requiring something more than a mere preponderance of the evidence. It is also repeatedly stated in the decisions, however, that the presumption is "materially weakened if not destroyed" when it is shown that the Patent Examiner failed to consider prior relevant art. Waldon, Inc. v. Alexander Manufacturing Company, 423 F.2d 91, 93 (5th Cir. 1970). The question then becomes, particularly in this case, how does one determine what art was considered or not considered in the Patent Office? Manifestly, the Fore and Hood patents were not specifically cited by the Patent Examiner, nor does it otherwise appear with any certainty from the file wrapper that he ever had occasion to examine them. Yet, Plaintiff contends, he must have done so because (at least as of June 8, 1973) those patents were on file in the classes or subclasses to which the Examiner referred in gleaning the prior art. Some of the decisions on this point refer to the presumption of validity in relation to the prior art "cited" by or to the Examiner (See Scott Paper Company v. Fort Howard Paper Company, 432 F.2d 1198, 1203 (7th Cir. 1970)), while other opinions contain language suggesting a much broader inference or rule concerning the art deemed to have been considered (see Hobbs v. United States Atomic Energy Commission, supra, 451 F.2d at 863–864). Even if it is assumed, however, that the prior art relied upon by Defendants *was* considered by the Examiner, the question remains as to whether that art was equally as relevant as the art specifically cited; and whether, taken together, the claimed invention would have been rendered obvious to one having ordinary skill in that art. As the Court said in Waldon, Inc. v. Alexan-

der Manufacturing Company, supra, 423 F.2d at 93:

> "We need not decide [the weight to be given to the presumption] here, however, because even if the prior art considered by the Patent Office is more pertinent than the Parker and Shadden prior art, the presumption of validity is not conclusive. Zero Manufacuring Company v. Mississippi Milk Producers Association, supra [5 Cir.], 358 F.2d [853] at 858–859. We conclude that in this case, 'Even assuming a presumption, it would not overcome the obviousness [of Claim 1 of the patent in issue here] which appears from the sum of the record. . . . .' Sisko v. Southern Resin & Fiberglass Corp., 5 Cir. 1967, 373 F.2d 866, 868 n. 4."

■ Lastly, the Court is also mindful of the Plaintiff's largely unrebutted and persuasive evidence that his machine was commercially successful in filling a previously unmet need among cabinetmakers and others who use laminated plastic in their manufacturing processes. But these are secondary considerations only, and "no amount of commercial success can validate a patent if the device lacks invention." Waldon v. Alexander Manufacturing Company, supra, 423 F.2d at 95.

■ Having carefully considered the testimony and the documentary evidence with respect to the scope and content of the prior art in relation to the patent in suit and the level of ordinary skill in the art (i. e., of machines used to cut or sever sheet materials), all in the context of determining obviousness or non-obviousness within 35 U.S.C.A. § 103—a question of law—it is the judgment of the Court that the claims of the patent in suit do not rise to the level of invention and are therefore invalid as a matter of law. Defendants' motion for judgment notwithstanding the verdict will be granted pursuant to Rule 50(b), F.R. Civ.P.

In an effort to avoid future uncertainty in the event of modification or reversal on appeal, it is desirable for the Court to make a conditional ruling upon each of the other presently pending motions pursuant to Rule 50(c), F.R.Civ. P.

■■ As noted at the outset, this case was submitted to the jury by way of special interrogatories pursuant to Rule 49(a), F.R.Civ.P. In so doing the Court included interrogatories designed to elicit the jury's findings with respect to the willfulness of the alleged infringement and whether the compensatory damages should be trebled. In these areas, however, the jury verdict was advisory only since trebling of damages in patent cases is always entrusted to the discretion of the Court in jury as well as non-jury trials. 35 U.S.C.A. § 284; 8 Walker on Patents, § 757 (Deller's 2d Ed. 1973). Under all of the circumstances of this case, including but not limited to the apparent invalidity of the patent in suit, the Court would exercise its discretion and decline to award treble or any other amount of exemplary damages, notwithstanding the jury's advisory findings. Similarly, it is the view of the Court that this is not an "exceptional case" justifying an award of attorney's fees under 35 U.S.C.A. § 285.

In all other respects, however, the case was fairly tried and the verdict of the jury was supported by substantial competent evidence. It follows that the Defendants' alternative motion for a new trial is conditionally denied.

If the ruling announced in this Order is reversed on appeal, it would be the intention of the Court (subject to the direction of the Court of Appeals) to enter judgment for the Plaintiff in the amount of the compensatory damages assessed by the jury ($94,500.00) plus taxable costs and injunctive relief prohibiting future infringement.

It is, therefore,

Ordered and adjudged:

1. That the patent in suit (No. 3,-496,812) is hereby declared to be invalid.

2. That the Defendants' motion for the entry of judgment notwithstanding the verdict is hereby granted, and the verdict is set aside.

3. That the Clerk is hereby directed to enter final judgment in favor of the Defendants and against the Plaintiff with Defendants' costs to be assessed according to law.