CLINICAL PRODUCTS LIMITED,
Plaintiff,

v.

Edward J. BRENNER, Commissioner of
Patents, Defendant.

Civ. A. No. 1032–64.

United States District Court
District of Columbia.

May 2, 1966.

William A. Drucker, New York City, Arthur E. Dowell, III, Washington, D. C., for plaintiff.

Joseph Schimmel, Sol., U. S. Patent Office, Jack E. Armore, Washington, D. C., of counsel, for defendant.

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 145 in which plaintiff seeks to obtain a patent containing the following claim:

41.  The use as a sustained release therapeutic agent in the body of ephedrine adsorbed upon polystyrene sulphonic acid.

■ In addition to substantively rejecting the claimed subject matter as obvious and unpatentable over the cited prior art, the Patent Office tribunals also formally rejected the claim as indefinite under 35 U.S.C. § 112 and as failing to come within a statutory class of patentable subject matter under 35 U.S.C. § 101. While the claim is admittedly quite broad, it is not considered to be indefinite or vague or ambiguous. On the contrary, the claim is precise and has exact limits. The broad "therapeutic" limitation would at least include remedial treatment of any body diseases or disorders for which ephedrine itself is known to be therapeutically useful, but the limitation is not so broad as to include prophylactic use of ephedrine resinate to preserve body health and prevent the spread of disease. Similarly, the "in the body" claim limitation is broad enough to include both oral and parenteral administration of the adsorption compound, which may be formed from the two elements of the combination either prior or subsequent to introduction into the body.

With regard to this issue of alleged indefiniteness of the claim in suit, it should be noted that the second paragraph of 35 U.S.C. § 112 does not read in terms of claiming the subject matter which the Patent Office or Courts regard as an applicant's invention, but rather reads in terms of "claiming the subject matter which the applicant regards as his invention," which provides considerable leeway to the applicant, if and provided that his claims include all truly essential limitations and do not utilize vague and ambiguous terms.

Before proceeding to the second formal ground of rejection, it is worth mentioning that the main difficulty with broad claims such as that in suit is not that the claim is so broad as to be indefinite, like infinity, but rather is that such a broad claim is quite likely to be either anticipated under 35 U.S.C. § 102 or rendered obvious under 35 U.S.C. § 103. For example, even if the claim were limited to release of ephedrine in the gastro-intestinal tract, which it is not, the claim would still read on release in (1) the stomach alone, (2) the intestines alone, or (3) both stomach and intestines, i. e., the whole gastro-intestinal tract.

Although the Court does not agree with the Board of Appeals rejection of the claim in suit as indefinite under 35 U.S.C. § 112, the Section 101 rejection is considered to be valid. In this regard, counsel for plaintiff conceded in his opening statement at the trial that the adsorption compound, or drug resinate, formed by adsorbing ephedrine on cation exchange resins is an old composition of matter in the physicochemical separation art. A new "use" of a known composition of matter can be properly claimed only by claiming the invention as a process or method. 35 U.S.C. §§ 100(b), 101. In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963). In re Hack, 245 F.2d 246, 44 CCPA 954 (1957), Bancroft and Sons Co. v. Watson, 170 F. Supp. 78 (D.C.D.C.1959).

Plaintiff contends that Claim 41 is really a "process" claim, according to the following special definition of the term in 35 U.S.C. § 100(b):

"The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."

In essence, plaintiff's position is that the statute should be interpreted to mean that "the term 'process' * * * includes a new use of a known * * * composition of matter," which plaintiff has literally claimed. Plaintiff also argues that "in the precise and rigorous German Patent Office this type of

claim form is accepted as narrow and exact."

With respect to the latter argument, the German Patent Office also refuses to grant product claims for chemical compounds, which are patentable in the United States in the form of composition of matter claims under 35 U.S.C. § 101. In compensation, under the analogy process doctrine the German Patent Office allows claims on obvious processes for preparing unobvious compounds. Such claims to obvious chemical manufacturing processes are unpatentable in this country under 35 U.S.C. § 103. In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961). Therefore, the Court is of the opinion that the type of claims accepted by the German Patent Office is immaterial and irrelevant to the issue of which forms of claims should be regarded as acceptable under 35 U.S.C. § 101 by the U. S. Patent Office.

In regard to the former argument concerning Section 100(b) of the statute, the presence or absence of such words as "process, art or method" or "which comprises" does not appear to be of critical importance. If an analogy may properly be drawn to another statutory class of patentable subject matter under 35 U.S.C. § 101, it is noted that a proper composition of matter claim, e. g., for a new chemical compound, certainly does not require a formal recitation of the words "composition of matter." However, there appears to be sound logic in defendant's argument that a proper process or method claim should recite at least one process step, although no authority is cited for this proposition.

The most pertinent authority which the Court has found in relation to the current propriety of the exact form of claim employed by plaintiff is the following statement from the Court of Customs and Patent Appeals majority Opinion for In re Fong et al., 288 F.2d 932, 933, 48 CCPA 897 (1961):

"The title of the application is striking in that it truly and succinctly states what the invention is, the *use* of PVP as a soil-suspending agent. * * * Their discovery was simply a new soil-suspending agent, a new use for a known compound. But because the law does not permit the claiming of such an invention in terms of use, the claims are directed to a process, a washing solution, or a composition for making the latter, conventional and recognized ways of claiming inventions predicated on the discovery of a new use."

The title of the Fong et al. application was "Use of Polyvinylpyrrolidone as a Soil-Suspending Agent," which is analogous to the presently claimed "use" of ephedrine resinate "as a sustained release therapeutic agent." The above-quoted dictum of Judge Rich clearly distinguishes between an application *title* written in terms of use, which is proper, and a *claim* drafted in terms of use, which is currently improper since "the law does not permit the claiming of such an invention in terms of use."

The words "currently improper" are chosen due to the following historical statement in an article by Walker, "Patent Protection Available on New Uses for Old Chemicals" in "Patents for Chemical Inventions", American Chemical Society, Washington, 1964, at page 96:

"With changes in the law, the propriety of certain forms of patent claims changes from time to time. Before 1900 it was common to have a claim on a use as such. Patents on uses as such had been going out of favor for some time."

Walker also makes the following pertinent comment, at page 88:

"Although a new inventor cannot get a product patent on a 'use', in the sense that it is an old product for a specific use—in effect a new label on the bottle—frequently adequate protection can be obtained by method claims covering the process steps of using the old composition for the new purpose."

In concluding his article, Walker asserts a substantive consideration relevant to the facts of this case:

"The real question is whether the new concept would have been obvious to one skilled in the art, 35 U.S.C. § 103 * * *. If the concept would have been obvious, it is not patentable, and no amount of rephrasing nor change in claim form can cure the basic defect."

■ The Court has concluded that the "basic defect" in plaintiff's Claim 41 in suit is that the claimed subject matter is obvious and unpatentable over the cited prior art under 35 U.S.C. § 103 for reasons set forth in the following Findings of Fact and Conclusions of Law, which are made pursuant to Rule 52(a), F.R.C.P.:

## FINDINGS OF FACT

1. This is an action brought under 35 U.S.C. § 145 in which plaintiff, as assignee of an application for patent by Wilfred Herbert Linnell, Stephen Paul Rety and Herbert Timmington, Serial No. 651,177, filed April 8, 1957, entitled "Res-in-Drug Compounds", seeks to have the Court authorize the issuance of a patent on that application. Plaintiff claims the benefit of priority under 35 U.S.C. § 119 of two British applications filed August 24, 1956 and March 14, 1957.

2. The sole claim in issue is Claim 41.

3. The specification of the application in suit relates to the adsorption of drugs on ion-exchange resins to provide slow and even release of the drug in the gastro-intestinal tract over an extended period of time. The resin, usually a polystyrene, has sulphonic acid or carboxyl functional groups for adsorbing basic drugs such as ephedrine or amphetamine, or the resin may have quaternary ammonium or primary amino functional groups for adsorbing acidic drugs such as barbituric acid derivatives. The rate of release of the drugs may be varied by factors including the percent of cross-linkage and particle size of the resin or varying the amount of drug chemically combined with the resin.

4. Claim 41 at issue reads as follows: "The use as a sustained release therapeutic agent in the body of ephedrine absorbed upon polystyrene sulphonic acid".

5. The prior art relied upon by defendant in support of the holding of unpatentability by the Patent Office Board of Appeals is as follows:

(a) The Keating patent No. 2,990,332, dated June 27, 1961, based on an application filed April 2, 1958, discloses pharmaceutical preparations comprising basic nitrogen-containing organic drugs, including inter alia primary and secondary amines, adsorbed on sulphonic acid cation exchange resins, the cross-linkage and particle size of the adsorption compound being such that the drug is slowly and relatively uniformly released by the gastric and intestinal juices at an effective therapeutic level through the period of time that the adsorption compound, or drug resinate, is in the gastro-intestinal tract. The drugs that may be used "include the adrenergic amines such as amphetamine, methamphetamine and ephedrine." The patent states that the application upon which it is based is a continuation-in-part of earlier filed, now abandoned applications Serial No. 527,-130, filed August 8, 1955, and 598,215, filed July 16, 1956. The disclosures of the abandoned applications correspond substantially to the indicated disclosure of the Keating patent, except that Serial No. 527,130 is directed to amphetamine, methamphetamine (desoxyephedrine) and "like substituted amphetamines", and Serial No. 598,215 is directed to "amine pharmaceutical compounds" including amphetamine, methamphetamine and antihistamines. Neither of the two abandoned applications specifically mentions ephedrine.

(b) The Larsen patent No. 2,498,687, granted February 28, 1950, discloses the adsorption or dry addition of ephedrine (or similar beta-arylethylamine derivatives such as amphetamine and desoxyephedrine) to a substance exhibiting base exchange such as clays, zeolites or "the recently introduced organic cation ex-

changers, for example, the sulfonated coal or the synthetic resin type as are non-toxic" in order to "prolong the effect of the medication, and at the same time to lessen the impact of the drugs on the system".

6. The primary amine amphetamine and the secondary amines methamphetamine (or desoxyephedrine) and ephedrine are structurally closely related compounds, as shown by the structural formulas for the three amine drugs disclosed in defendant's Exhibit 4, i. e., Drill, "Pharmacology in Medicine," McGraw-Hill Book Company, New York, 1954.

7. The Larsen patent discloses the prior art-recognized equivalence of ephedrine, amphetamine, and desoxyephedrine as vasoconstrictors. Larsen specifically lists ten "analogues and derivatives having an essentially similar action", including all three of the above amine drugs, and describes them as "beta-arylethylamine derivatives." Larsen then states that "all of the foregoing compounds contain the group R-C-C-N where R is a six-membered carbon ring. Those skilled in the art recognize the six-membered carbon ring ethylamine structure as contributing vasoconstrictive action."

8. Ephedrine, amphetamine and methamphetamine were known to be sympathomimetic as well as adrenergic amines, as admitted by plaintiff's witness Flower at the trial.

9. Ephedrine and amphetamine are among the most typical members of the class of therapeutic compounds known as sympathomimetic amines.

10. The structural formulas and pharmacological properties of ephedrine, amphetamine and methamphetamine were well known to those skilled in the art at the time the present application and its British counterparts were filed.

11. There is implicit disclosure in plaintiff's application to the effect that the ephedrine adsorbed on the saturated cation exchange resin exhibits a release pattern in the gastro-intestinal tract whereby the drug is initially released in maximum amount and then by sustained release as equilibrium is reached.

12. The evidence introduced at trial relating to the sales of plaintiff's commercial products "Bronchipax" and "Asmapax" is not conclusive of the fact that these sales were due primarily or even at all to the ephedrine resinate product defined in the claim at bar, other active ingredients being present in larger amounts in these commercial drug preparations.

13. Ephedrine adsorbed on a cation exchange resin was known to the chemical art at the time the present application and its British counterparts were filed.

14. The adsorption of ephedrine upon polystyrene sulphonic acid for sustained release therapeutic purposes would have been obvious to one skilled in the art from the combined teachings of the Keating and Larsen disclosures.

15. The form of the claim in suit is such that it does not come within any of the statutory classes of patentable subject matter set forth in 35 U.S.C. § 101.

16. The claim in suit particularly points out and distinctly claims the subject matter which plaintiff regards as its invention, as required by 35 U.S.C. § 112.

## CONCLUSIONS OF LAW

1. The effective reference date of a United States patent under 35 U.S.C. § 102(e) is the filing date of any parent or earlier filed continuation-in-part application(s) mentioned therein with respect to all commonly disclosed subject matter carried over into the issued patent from the earlier filed copending application(s). 35 U.S.C. §§ 102(e), 103, 112, 120. Goodyear Tire and Rubber Co. et al. v. Ladd, 349 F.2d 710 (D.C.Cir. 1965), citing Asseff v. Marzall, 88 U.S.App.D.C. 358, 189 F.2d 660 (1951). See also Hazeltine Research Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965); In re Heritage, 182 F.2d 639, 37 CCPA 1109 (1950); and In re Switzer et al., 166 F.2d 827, 35 CCPA 1013 (1948).

■ 2. An applicant is not entitled to patent protection where he did nothing more than combine the specific teachings of the prior art references in a manner which would have been obvious to one ordinarily skilled in the art at the time the invention was made. 35 U.S.C. § 103.

■ 3. Patentability, as distinguished from validity, cannot normally be predicated upon any advantage or result that has not been either expressly or at least implicitly disclosed in the application as filed. Abbott et al. v. Coe, 71 U.S.App.D.C. 195, 109 F.2d 449 (1939), In re Stewart, 222 F.2d 747, 42 CCPA 937 (1955).

4. Obviousness does not require absolute predictability. In re Moreton, 288 F.2d 940, 48 CCPA 928 (1961).

■ 5. Evidence of commercial success is always a material, but not controlling, factor in determining the issue of obviousness of a claimed invention in a civil action under 35 U.S.C. § 145. California Research Corp. v. Ladd, 356 F.2d 813 (D.C.Cir. 1966).

■ 6. Any evidence of commercial success not directly related to the claimed subject matter cannot normally be persuasive of patentability. Marconi Wireless Telegraph Co. of America v. United States, 320 U.S. 1, 35, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943), In re Hollingsworth, 253 F.2d 238, 45 CCPA 830 (1958).

■ 7. A new use of a composition of matter known to be old per se should be set forth in the form of a process or method claim in order to be patentable. 35 U.S.C. §§ 100(b), 101. See In re Fong et al., 288 F.2d 932, 48 CCPA 897 (1961).

■ 8. The definition of "process" in 35 U.S.C. § 100(b) does not constitute a new or modified statutory class of patentable subject matter different from those set forth in 35 U.S.C. § 101. See Reviser's Note, 35 U.S.C.A. § 101, and Federico, "Commentary on the New Patent Act," 35 U.S.C.A. §§ 1–110, pp. 15–17. (1954).

9. Plaintiff is not entitled to a patent containing Claim 41 of application Serial No. 651,177.

10. The Complaint should be dismissed.