522

**AGRASHELL, INC., Plaintiff,**

v.

**HAMMONS PRODUCTS COMPANY,**
**Defendant.**

**No. 2131.**

United States District Court
W. D. Missouri, S. D.

Nov. 6, 1967.

Miller, Fairman, Sanford, Carr & Lowther, Springfield, Mo., Keith, Johnston, Isner & DesMarais, New York City, for plaintiff.

Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, Mo., Browne, Schuyler & Beveridge, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

COLLINSON, District Judge.

Plaintiff brought this suit for patent infringement and defendant counter-claimed for damages based on alleged anti-trust violations. A separate trial of the infringement issue was ordered and tried before the Court. The suit is based on Perry Reissue Patent No. 23,422, issued October 23, 1951, based on Original Patent No. 2,421,806, issued June 10, 1947, on an application dated April 14, 1944.

The evidence shows that Frank R. Perry was a civilian employee at an Army Air Depot in California during World War II. The overhauling of piston-type airplane engines required removing carbon from the pistons and cylinders, which was done by solvents and hand scraping. Sand blasting was a well known process at that time, but it pitted and damaged the metal when used to remove carbon. Perry experimented with the use of various materials suitable as "soft-grit abrasives" in place of sand. The evidence shows that similar experiments were being conducted by others engaged in overhaul of airplane engines. In 1943 Perry applied for a patent on an abrasive material composed of "starch killed dehydrated cereal grain," which he had found quite successful in this operation. This patent was never granted. Prior to this Perry had used clover seed quite successfully.

The present patent was based on the discovery by Perry that ground black walnut shells, ground and sifted to a mesh size of 10–15 or 10–30, were an ideal "soft-grit abrasive" for removing carbon. When used in an air blast this material would remove carbon but not pit the metal. More important, it did not as readily turn to powder (as did the cereal grains) and could be reused. It was also relatively inexpensive to produce. Perry's patent claims, which plaintiff contends have been infringed by defendant, are basically the *method* of cleaning metal by "projecting there against a stream of fluid under pressure carrying in suspension therein pelletized black walnut shells," and a *product,* "an abrasive material for use in air blasts for cleaning metal comprising pelletized black walnut shells."

The defendant is charged with infringement by manufacturing and selling the "product" and by aiding and inducing others to use the "method."

The evidence discloses that the words "pelletized black walnut shells" is somewhat misleading. The product intended to be described, and the product defendant admittedly manufactured is simply ground black walnut shell, sifted to the desired sizes. The cracked walnut shells (after the meat is removed) are placed in an ordinary hammer mill (with which everyone raised on a farm is familiar) and ground until they pass through a desired size mesh. Smaller particles than desired are removed by sifting them out through a smaller mesh, and the remainder is classified according to the mesh size of the larger and smaller mesh used, such as "10–30 mesh."

Such walnut shell "flour" or "meal," as it is commonly called, is today used in many different ways, both as an abrasive and for a number of entirely unrelated purposes. In the abrasive field it is not only used in "air-blasts" as described in the Perry patent, but in "tumbling" and centrifugal blasting. In the tumbling (barrel cleaning) procedure the abrasive and the objects to be cleaned are placed in a barrel or other closed container and agitated. In the centrifugal blasting the abrasive is propelled against the object to be cleaned by centrifugal force from a revolving wheel, rather than by a stream of fluid.

Prior to 1943 there was no great commercial use of ground black walnut shell. However, ground nut shells of various kinds, ground to a flour, were manufactured, and sold for a number of diverse uses, including the cleaning and polishing of metal, an abrasive function. One patent had been secured, the Sirotta Patent, Number 2,194,773, dated March 26, 1940, for the use of ground nut shells, including black walnuts, in the cleaning of furs. The function of the nut shell flour in this case, however, apparently was not abrasive, but simply to absorb cleaning fluid and carry it through the fur. Nut shell flour was sold commercially for this purpose prior to 1943.

In the experiments conducted at other air bases and by commercial airlines prior to 1943, various other materials were used as a substitute for sand in the sandblasting procedures, including ground cocoanut shells. Undoubtedly, ground black walnut shell proved to be the most effective, because is was the right density to remove the carbon and not mar the metal; it could be reused repeatedly without being lost through pulverization; and it was relatively inexpensive. It was later discovered that the pit of apricots had exactly the same physical characteristics as walnut shells, and it is now used interchangeably with walnut shell.

The defendant contends that the patent claims as to the product itself are invalid; that they simply describe a new use for a known material; and that the new use was so obvious as to make it unpatentable. The plaintiff relies on the 1952 amendment to the patent laws which defines the word "process" as used in Chapter 10 of Title 35, as including "[A] new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

However, the courts have uniformly held that a new use of a known composition of matter or known material can only be patented by a patent of the process or method, and not by a product claim. Clinical Products Limited v. Brenner, 255 F.Supp. 131 (D.D.C.1966); In re Hack, 245 F.2d 246, 44 CCPA 954 (1957).

In the latter case the Court said:

"While it recognizes (§§ 100[b] and 101) that the discovery or invention of a new use of a known process, machine, manufacture, composition of matter or material may be patentable, it is obvious that such use can be nothing other than a method or process. As a matter of claim drafting, therefore, the discoverer of a new use must protect his discovery by means

of process or method claims and not product claims."

The Court finds that claims numbered 3, 4, 9, 10, and 11 of the Perry patent all are an attempt to secure a patent on a known material which was in commercial use and in fact described in a prior patent (the Sirotta patent) over one year prior to the application for the original Perry patent. For this reason the issues on infringement of the product claims are found against the plaintiff.

The second claim of the plaintiff is that the defendant is a contributory infringer, because it produced, advertised and sold its product especially for use which infringed the method claims of the Perry patent.

The plaintiff's proof on this point was quite lengthy, although somewhat inconclusive. The defendant started manufacturing and selling the product in 1953. Defendant's president had knowledge of plaintiff's patent. At that time ground walnut shells were used commercially for many purposes other than air-blasting. The defendant's president testified on deposition that he "presumed" and "understood" that some of his purchasers were using his product for air-blast cleaning, but that he did not know it for a fact or ever see it so used.

The plaintiff relies principally on a form letter mailed by defendant which contained a reprint of an article from American Machinist. This article only referred to mechanical (centrifugal) blasting by walnut shell flour to debur automatic transmission parts. The accompanying letter in addition extolled walnut shell meal as cleaning media in barrel finishing, but in no way referred to air-blast cleaning. This letter and circular cannot be considered an inducement or encouragement to its recipients to infringe the Perry method claims.

As a matter of fact, plaintiff's proof wholly failed to show a specific infringement of the patent by any purchasers of the defendant's product. But even if actual infringement by a purchaser was shown, this alone would not support a claim of contributory infringement under the facts of this case. At the time defendant started the sale of this product there was a definite commercial demand for it for many non-infringing uses. In the absence of any showing that the defendant encouraged, induced, or instructed in its use in the method described in the Perry patent, a claim of contributory infringement must be denied.

However, there is a more compelling reason for denying this claim. The art of cleaning metal by projecting a "stream of fluid" against it containing an abrasive was well known long before 1943. Ground walnut shells, as well as ground nut shells of all kinds, were known to have abrasive properties long before 1943. This Court finds that the use of ground walnut shell in a stream of fluid was so obvious to one having ordinary skill in the art that the method claims of the Perry patent are non-patentable under § 103, Title 35, U.S.C.A.

Both parties to this case requested allowance for attorneys fees. Taking into account all the facts in the case, the Court is denying the request of the defendant (the prevailing party) for allowance of attorneys fees.

Defendant's counsel are directed to prepare and file with the Court, and serve upon opposing counsel for approval as to form, a proposed judgment entry in accordance with the above Memorandum within 15 days from this date.

This Memorandum of Decision shall serve as findings of fact and conclusions of law under the provisions of Rule 52(a) Fed.R.Civ.P.