AGRASHELL, INC., Plaintiff,

v.

BERNARD SIROTTA COMPANY, Edwin M. Sirotta and Milton A. Sirotta, Defendants and Third-Party Plaintiffs,

v.

HAMMONS PRODUCTS COMPANY, Impleaded Third-Party Defendant, and

Purex Corporation, Ltd., Impleaded Third-Party Defendant.

AGRASHELL, INC., Plaintiff,

v.

BERNARD SIROTTA COMPANY, Edwin M. Sirotta and Milton A. Sirotta, Defendants and Third-Party Plaintiffs,

v.

HAMMONS PRODUCTS COMPANY, Impleaded Third-Party Defendant.

Nos. 63 C 206, 65 C 661.

United States District Court
E. D. New York.
March 6, 1968.

Albert C. Johnston, New York City (Keith, Johnston & Isner, New York City, of counsel), for plaintiff.

Edward Halle, Garden City, N. Y., and David F. Cohen, New York City (Hirsh, Newman, Cohen & Brown, New York City, of counsel), for defendants and third-party plaintiffs Sirotta.

Lawrence C. Moore, Washingon, D. C. (Moore & Gunn, Washington, D. C., of counsel), for third-party defendant Hammons.

Thomas V. Heyman, New York City (Watson, Leavenworth, Kelton & Taggart, New York City, of counsel), for defendant Purex.

DOOLING, District Judge.

The several motions arise out of three suits involving the same patent (Re-issue No. 23,422, 1951, of No. 2,421,806, 1947) on a method and material for removing carbon from internal combustion engines through use of "pelletized" black ,walnut shells or other "pelletized" nut shells of like hardness.

One case, Agrashell, Inc. v. Hammons Products, 279 F.Supp. 522, W.D.Mo., S. D., has now been tried by the Honorable William R. Collinson on all the patent issues, and he held claims 2, 4, 7, 8, 10 and 11 of the re-issue patent invalid and the method claims (2, 7 and 8) not infringed. Judgment on the patent issues was entered on November 22, 1967, under Rule 54(b), first sentence, and the Court reserved jurisdiction over Hammons's counterclaim for alleged anti-trust vio-

lations. The patent decision has been appealed to the Court of Appeals for the Eighth Circuit and is undecided.

The other two cases are pending in this district and not only is Hammons a party, but so also are Sirotta (collectively), a purchaser of Hammons's allegedly infringing shell product, and (in 63 C 206) Purex, licensor or assignor, or both, of the plaintiff. The cases embrace not only the patent issue but also Hammons's anti-trust counterclaims and the Sirotta claim-over against Hammons for indemnity against any infringement liability, and its counterclaims for false marking and malicious prosecution. The suits in this Court have been held up pending the decision in the Missouri District Court.

The questions now presented are:

(1) Is Hammons now entitled to a dismissal of the complaints, and third-party complaints, as *res judicata,* and to a stay further proceeding on the anti-trust counterclaims pending the disposition of the same subject matter in the Missouri district court.

(2) Is Sirotta entitled to a dismissal of the patent claims against it as *res judicata* and to a severance for a trial in this Court of the Sirotta counterclaims against plaintiff for "malicious prosecution" and "false marking" [see 35 U.S.C. § 292(b)].

(3) Is plaintiff entitled to have the two actions in this Court consolidated for trial in this Court and to have Hammons enjoined from prosecuting the anti-trust counterclaim in the Missouri District Court. '

The first question is the scope of Judge Collinson's decision. Strictly, he passed only on claims 2, 4, 7, 8, 10 and 11 of the patent, although it is difficult to believe that any of claims 1, 3, 5, 6, and 9 could long survive a final adjudication of the invalidity of the claims that Judge Collinson dealt with. The ground of invalidation of claims 4, 10 and 11 was that the "product" of those claims was a known and used product and that plaintiff's invention was, in its essence, invention of a new use of a known material or composition of matter [cf. 35 U.S.C. § 100(b)]. In his memorandum of decision Judge Collinson found all of claims 3, 4, 9, 10 and 11 bad on this ground, although his judgment excluded reference to claims 3 and 9. So far as the method claims were concerned, Hammons was charged as a contributory infringer, and the evidence failed to support the charge—the article had non-infringing uses and Hammons was not shown to have actively induced infringement [35 U.S.C. § 271(b) (c)]. However, Judge Collinson went farther, holding that the method claims in suit did not measure up to the unobviousness standard of 35 U.S.C. § 103.

■ 1. So far, then, as the present cases are between plaintiff and Hammons (and they are at issue with each other on validity and infringement in both), plaintiff has had its day in court against Hammons and may not relitigate the issues of validity and infringement adjudicated in the Missouri Court. However, since not all claims of the patent have been formally adjudicated, Hammons must now amend, plead the judgment in regular form, and, unless it is agreed that the unadjudicated claims cannot survive invalidation of the other claims as a matter of obviousness, Hammons will have to move for summary judgment to dispose of or refine the unadjudicated issues. Good sense suggests awaiting the Court of Appeals decision.

■ Hammons and plaintiff alone are interested in the antitrust counterclaim. While it was first interposed in this Court, there is no reason to litigate it in this district when plaintiff is evidently headquartered in California and Hammons in Missouri. In the circumstances, action on the counterclaim should be stayed, certainly at least until Judge Collinson indicates that further proceedings in his Court are not in the interests of justice.

2. Is Sirotta entitled to a dismissal of the patent claims made against it?

■ A. Plainly, Sirotta derives an immunity from damage liability for any product covered by the adjudicated prod-

uct claims and not by the unadjudicated product claims that it bought from Hammons and used in a manner not constituting an infringement of the unadjudicated method claims; but that is not its own immunity but rather an aspect of the right to make, use and vend that Hammons won as against plaintiff in the Missouri suit. Kessler v. Eldred, 1907, 206 U.S. 285, 289–290, 27 S.Ct. 611, 51 L.Ed. 1965. This, however, is not either a collateral estoppel or *res judicata*, as *Kessler* points out, 206 U.S. at 288, 27 S.Ct. 611.

B. Zdanok v. Glidden Co., 2d Cir. 1964, 327 F.2d 944, 953–956, would, as Judge Bartels has already indicated, apply to this case in which Sirotta would make a defensive use of the earlier adverse judgment as far as it goes. It would not go the whole distance as not all claims were passed upon by Judge Collinson. The important question is whether patent cases should be considered an exception in view of the tradition, sanctioned by the Supreme Court, of permitting repeated litigation in the teeth of an initial adjudication of invalidity (Triplett v. Lowell, 1936, 297 U.S. 638, 642–644, 56 S.Ct. 645, 80 L.Ed. 949; Maytag Co. v. Hurley Machine Co., 1939, 307 U.S. 243, 245, 59 S.Ct. 857, 83 L.Ed. 1264). The Court of Claims, not yet hospitable to the *Zdanok* rule in any case (Technograph Printed Circuits, Ltd. v. United States, 1967, 372 F.2d 969, 974–975, 178 Ct.Cl. 543), concluded, largely on policy grounds, that it would not extend the rule to the patent case then before it (372 F.2d at 976–978). The Delaware District Court applied the rule of *Zdanok* where the patentee had no new evidence to offer and there had been no earlier adjudication of validity anywhere. Nickerson v. Pep Boys, D.C.1965, 247 F.Supp. 221. The Seventh Circuit may be thought to indicate that a court might be bound to follow an earlier decision of invalidity as a precedent if the evidence bearing on validity was the same in the second case. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 1966, 356 F.2d 442, 448, fn. 3.

In the present state of evolution of the doctrine of unilateral estoppel its invocation has seemed to depend on the existence of circumstantial assurances of the fairness of applying it in the particular case. It is not approached with the inflexibility and the insistence on the dominance of principle that generally characterizes the application of the doctrine of *res judicata* (and, measurably, in collateral estoppels) where the parties and the claim (or issues) are the same. Here, there is little substantial indication that at a new trial in this Court anything will be different except the tribunal. Hence, the question narrows to whether there is or should be a policy exception for the generality of patent cases.

The patentee holds letters patent by which the sovereign grants him, in the public interest, a lawful monopoly. The patent irretrievably discloses the inventor's art, however modest it may be. A painstaking if not always rigorous examination of applications for patents precedes their issuance. When issued, the patent is presumed to be valid (35 U.S.C. § 282); the right to sue for infringement is statutory (35 U.S.C. § 281), and it expressly includes the right to an injunction (35 U.S.C. § 283) and damages (35 U.S.C. § 284). While the genesis of "innovative" industrial effort and its sociological determinants, if any, are constantly under study (Cf., e. g., Schmookler, Invention and Economic Growth (1966), 189–195, 199–201, 206–209, and passim; Usher, A History of Mechanical Inventions (Beacon Press ed. 1959), 60–83), the policy of seeking to promote the progress of science and useful arts by exercising the constitutional power to establish a patent system has been a constant in national legislative history from 1790 down to the present. See 1 Robinson, Patents (1890) 76–97 for earlier history. The patent system, including its relation to the courts and litigation, is part of a manifold that is complicatedly intercalated in the social structure, beyond the complications usual to subsets of legal norms.

Given the nature of the patentees' rights, the policy implications of the current patent enactments, the range of divergent but practically irreviewable factual determinations possible in applying the unobviousness standard of 35 U.S.C. § 103, and the small risk of a harassing multiplicity of suits on any one patent, it is concluded that the policy of the rule of *Zdanok* does not extend to a patent case in which a once-defeated patentee seeks to relitigate claims of a patent that have been once held invalid in a different circuit. The rule of *Zdanok* is one of economy of administration and not one of abstractly perfect justice; indeed, even *res judicata* in its strictest aspect yields where an issue deeply invested with public concerns is involved. Cf. Fay v. Noia, 1963, 372 U. S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Townsend v. Sain, 1963, 372 U.S. 293, 318–319, 83 S.Ct. 745, 9 L.Ed.2d 770.

C. When the pre-trial and trial of 63 C 206 were imminent in this Court defendants Sirotta and Hammons moved to stay the trial in this Court until the Missouri case was tried. The statements made before Chief Judge Zavatt during the proceedings on February 1, 1967, and the language of the order of February 10, 1967, reflect the undertaking of Sirotta and Hammons to be bound by the Missouri judgment and do not reflect any such agreement on plaintiff's part. That was a price paid by defendants for, in effect, getting the forum they wanted. For all that appears plaintiff would have preferred to proceed in 63 C 206 and 65 C 661 consolidated in this Court.

It follows that Sirotta is not entitled to a dismissal of the patent claims passed on by the Missouri Court. Since those issues stand for trial, it would be best to defer until the pre-trial the question of a separate trial of the "malicious prosecution" and "false marking" counterclaims.

3. Plaintiff moves to consolidate the two actions. No useful purpose is now served by having two cases in which the substantial issues are the same. It is impossible to tell from the pleadings what additional issues Purex introduces and what their status is, but if the Purex issues have reality they exist in both cases.

Settle orders on notice.