AGRASHELL, INC., Appellant,

v.

HAMMONS PRODUCTS COMPANY, Appellee.

HAMMONS PRODUCTS COMPANY, Appellant,

v.

AGRASHELL, INC., Appellee.

Nos. 19221, 19227.

United States Court of Appeals Eighth Circuit.

July 23, 1969.

Rehearing Denied Sept. 3, 1969.

Albert C. Johnston, of Keith, Johnston, Isner & Eslinger, New York City, for Agrashell, Inc.; William P. Sanford, of Miller, Fairman, Sanford, Carr & Lowther, Springfield, Mo. and Douglas Stripp, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., on the briefs.

William E. Schuyler, Jr., of Browne, Schuyler & Beveridge, Washington, D. C., for Hammons Products Co.; Jim Zegeer, Washington, D. C., B. H. Clampett, of Daniel, Clampett, Ellis, Ritterhouse & Dalton, Springfield, Mo., and Damon M. Gunn, Washington, D. C., on the briefs.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

On June 10, 1947, United States Patent No. 2,421,806 for an invention entitled "Cleaning Method and Material Therefor" was issued to Turco Products, Inc., assignee, on an application filed April 14, 1944, by Frank R. Perry. The patent here in suit is Re. 23,422, a reissue dated October 23, 1951, of the Perry patent with additional claims. The patent expired June 10, 1964. By assignment the plaintiff, Agrashell, Inc., acquired Turco's interest and rights in the patent including claims for damages for past infringement.

The claims in issue are six in number. Claims 4, 10, and 11 relate to a product, namely, an abrasive material, for use in air blasts for cleaning metal, comprised of pelletized black walnut shells;[1] two of these claims specify screen size. Claims 2, 7, and 8 relate to a method of cleaning metal by projecting thereagainst a stream of fluid under pressure containing in suspension pelletized black walnut shells. The plaintiff has described the patent in its main brief as follows:

"The patent disclosed Perry's discovery that he could provide a highly efficient cleaning operation by providing and utilizing, as an 'abrasive material' for blasting deposits from articles such as engine parts, pellets of hard nut shells, particularly of black walnut shells, which he had found peculiarly suitable in that they were hard enough to remove carbon deposits by blasting impacts, but so resilient that they would neither pit the metal nor break up into dust."

---

1. The district court's memorandum refers mistakenly to product claims 3 and 9 as well as to 4, 10, and 11. Agrashell, Inc. v. Hammons Prods. Co., 279 F.Supp. 522, 524 (W.D.Mo.1967). The court's ensuing judgment, however, correctly relates only to product claims 4, 10, and 11.

Agrashell, by a complaint filed August 7, 1963, sued the defendant, Hammons Products Company, for infringement of the Perry patent. It brought that action, however, as the grantee under an "Exclusive License Agreement." Judge Oliver, relying primarily upon the teachings of Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), and Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 466, 468, 46 S.Ct. 166, 70 L.Ed. 357 (1926), dismissed that suit on the grounds that the agreement did not give the licensee plaintiff the right to sue for infringement in its own name and that the patent owner was a necessary party. Agrashell, Inc. v. Hammons Prods. Co., 248 F.Supp. 258 (W.D.Mo.1965). This court affirmed. 352 F.2d 443 (8 Cir. 1965). See also Agrashell, Inc. v. Composition Materials Co., 40 F.R.D. 395 (S.D.N.Y.1966). Judge Oliver's dismissal and our affirmance, however, did not "prohibit Agrashell from being a party to any other suit it may maintain in which all indispensable parties are made parties." 248 F.Supp. at 260.

After that dismissal the present action by Agrashell against Hammons was instituted upon a new complaint filed February 3, 1965. This purported to overcome the defect of parties in the first action by an allegation of a formal assignment to Agrashell of all interests in the patent effective as of December 31, 1960. Actual and punitive damages for direct and contributory infringement of the Perry patent are sought. Hammons by its answer asserted, among other defenses, the invalidity of the patent. It also counterclaimed for damages based on alleged anti-trust violations and for a declaratory judgment of unenforceability.

Judge Collinson ordered trial initially on the issues of validity and infringement and deferred disposition of the counterclaims. He found that the patent's product claims concerned a known material in commercial use and described in an earlier patent more than a year before the Perry application, and he held against Agrashell on the issue of direct infringement. He also denied Agrashell's claim of contributory infringement. Finally, he found that the patent's method claims concerned a process long known and a procedure obvious to one having ordinary skill in the art and therefore unpatentable. Agrashell, Inc. v. Hammons Prods. Co., 279 F.Supp. 522 (W.D.Mo.1967). Judgment was entered accordingly and Agrashell's complaint was dismissed with the court expressly retaining jurisdiction for adjudication of the counterclaims.[2]

Agrashell appeals. Hammons cross appeals from that portion of the judgment denying it attorneys' fees and from the trial court's failure to determine the issue of enforceability. Hammons, however, has now withdrawn the fee issue.

*The problem.* The problem which the patent purported to meet was that of finding a product, quickly effective and nondamaging, for the removal of deposits on metal and of developing a practicable method of using that product. Substances theretofore used had damaged metal and old methods had been time-consuming and often by hand.

*The background as to product.* Judge Collinson outlines this background in his memorandum. 279 F.Supp. at 522–523. Perry himself had worked with wheat particles and clover seed in aircraft part cleaning. On February 20, 1943, his use of clover seed in air blast cleaning was reported in the Sacramento Air Depot News. On September 4, 1945, he received United States Patent No. 2,383,-988 on an application filed October 26, 1943, for a "Method of Making Abrasive Material" out of whole grain wheat. And the record contains other evidence as to the use of coconut shells, meal, other nut shells, and apricot pits as abra-

2. For related litigation see Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965), reversing and remanding 229 F.Supp. 98 (E.D.N.Y.1964); Agrashell, Inc. v. Bernard Sirotta Co., 281 F.Supp. 704 (E.D.N.Y.1968).

sives. There was use, prior to the application for the Perry patent in issue here, of black walnut shells and like materials for industrial uses such as filler for dynamite, paints, and glue products. The use of ground nut shells including black walnut, but without a size limitation, although stating that 14 to 40 mesh "are satisfactory", is disclosed in United States Patent No. 2,194,773 issued March 26, 1940, to Milton A. Sirotta on an application filed November 17, 1938. This bore the title, "Fur Treating Preparation and Method of Treating Furs." There was also government use of black walnut shells for activated carbon in gas masks in 1942–43. And there is evidence in the record, although not without contradiction, of use of shell material prior to 1944 at air bases and by American Airlines to clean metal aircraft parts.

Thus ground nut shells, including those of the black walnut, enjoyed known commercial uses prior to the application for the Perry patent.

■■ *The product claims.* With this background as to the use of ground nut shells in general, and of ground black walnut shells in particular, for a variety of commercial purposes, including the abrasive process, we would be hard put to ascertain patentability in the product claims. We see no support for such a product claim patent in the 1952 Act's provisions that a patent may be obtained, subject to stated conditions and requirements, for "any new and useful process", 35 U.S.C. § 101, and that "process" includes a new use of a known material, 35 U.S.C. § 100(b), and we are inclined to agree with those holdings that under this statute a new use of known material is to be patented, if at all, by process or method claims and not by product claims. In re Hack, 245 F.2d 246, 248, 44 CCPA 954 (1957); In re Wiggins, 397 F.2d 356, 359 n. 4 (CCPA 1968); Clinical Prods., Ltd. v. Brenner, 255 F.Supp. 131, 132 (D.D.C.1966); Joseph Bancroft & Sons Co. v. Watson, 170 F.Supp. 78, 80 (D.D.C.1959). See Rohm & Haas Co. v. Roberts Chemicals,

Inc., 245 F.2d 693, 699 (4 Cir. 1957). Despite the trial court's observation, 279 F.Supp. at 523, Agrashell does not here argue reliance on the 1952 amendment and it asserts that it did not do so in the trial court. Its position is that the district court overlooked the limitation in each of the three product claims to "an abrasive material for use in air blasts for cleaning metal" and comprised of "pelletized black walnut shells." Its position then, necessarily, is that "the Perry material was not known before Perry," and thus is a new material, and it defines that material as "a collection of granules constituting pellets air-blastable," possessed of the characteristics of appropriate "hardness" so as not to powder, and "effective pellet size".

This does not convince us. Black walnut shells, obviously, are a well-known natural substance and their being ground and utilized in industry and even for cleaning metal was pre-Perry. What Agrashell's position comes down to is that pelletization and the specified mesh size "suitable for being air-blasted" are critical. But even mesh size is absent in claim 4 and the specification of size varies, on the small end, between claims 10 and 11. Judge Collinson pointed out, 279 F.Supp. at 523, that the claims' phrase "pelletized black walnut shells" is somewhat misleading. If its meaning is confined to mere shape and size, as apparently was intended, that is one thing. See Webster's New International Dictionary (2d ed. 1960) which defines the noun "pellet" as "A round and usually small body; a little ball * * *" and the transitive verb "pellet" as "to form into pellets". But if it is used in the other sense, such as the medicinal or pharmaceutical one, it would have a manufacturing connotation and be misleading. As the trial court said, "The product intended to be described, and the product defendant admittedly manufactured is simply ground black walnut shell, sifted to the desired sizes." Shell grinding and shell sifting to desired size are embraced in the earlier Sirotta patent.

For us, black walnut pelletization and a limited size range, in this context, are too little and too thin a base to qualify as a patentable product claim.

*The background as to method.* Much of what we have said above as to the product has equal pertinency as to the method. Sandblasting as a process for the removal of deposits on engine parts was known long prior to Perry. Perry himself experimented with blasting grains and other materials. The February 1943 publication, hereinabove referred to, described his use of clover seed in place of sand in airblasting pistons and cylinders and its adoption "in several air depots". There is evidence as to the use of walnut shell at air bases and by American Airlines prior to 1944. United States Patent No. 2,328,581 issued September 7, 1943, to Nelson J. Quinn on an application filed November 8, 1940, was for an "Abrasive Projecting Apparatus." It recited that the word "abrasive" as used therein was intended to embrace all materials which, when directed against a surface, have an effect thereon. "Such material might be sand, metallic shot or grit, other granular material, polishing balls, such as leather pellets, or the like."

So far as we can ascertain from the record, none of this was considered by the Patent Office in processing the Perry patent.

*The method claims.* With this background we cannot escape the conclusion that the use of black walnut shells ground to a size within a specified range in airblasting for cleaning deposits on metal is a process step obvious to one skilled in the art.

We arrive, as is nearly always the case, at the question whether the vital precedent is that of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), or that of its companion case, United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). We have no difficulty whatso-

ever in concluding that it is *Graham* and not *Adams* which governs here on the issue of nonobviousness. The barrier of 35 U.S.C. § 103 applies and the condition of nonobviousness therein stated is not fulfilled. See L & A Products, Inc. v. Britt Tech. Corp., 365 F.2d 83 (8 Cir. 1966); Greening Nursery Co. v. J & R Tool & Mfg. Co., 376 F.2d 738 (8 Cir. 1967); General Mills, Inc. v. Pillsbury Co., 378 F.2d 666 (8 Cir. 1967); Gerner v. Moog Indus. Inc., 383 F.2d 56 (8 Cir. 1967), cert. denied, 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 981; National Connector Corp. v. Malco Mfg. Co., 392 F.2d 766 (8 Cir. 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259; University of Illinois Foundation v. Winegard Co., 402 F.2d 125 (8 Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1191, 22 L.Ed. 452.

We are aware of the suggestion that the Eighth Circuit has not upheld any patent since the Supreme Court decided Graham v. John Deere Co., by an opinion which concerned three cases emanating from this court. This may be so. Whether this fact should be a matter of concern to the judges of this court is not important on the appeals before us. We are certain only that the present patent, with its focus upon the use, in airblasting of metal, of black walnut shell ground to a specified size, lacks the requirement of nonobviousness and is not patentable. This is not the case for us to follow *Adams* rather than *Graham*.

We hold that the defendant clearly sustained its burden under 35 U.S.C. § 282 of establishing invalidity of the Perry patent. This conclusion makes it unnecessary for us to consider the issues of infringement, contributory infringement, and unenforceability. The defendant's appeal, No. 19,227, upon the abandonment of the fee issue, of course became merely protective.

The judgment of the district court is affirmed.